UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

RECEIPT # 63830
AMOUNT $150 + 7.35 cash
SUMMONS ISSUED N/A
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. pr
DATE 4/28/05

ANN GAGLIARDI,

    Plaintiff

v.

SOVEREIGN BANK,

    Defendant

Civil Action
No. 05-

05   10859 NG

MAGISTRATE JUDGE _____

## NOTICE OF REMOVAL

**TO: THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

The Defendant, Sovereign Bank (the "Defendants") submit the following Notice of Removal pursuant to Fed. R. Civ. P. 81(c), and states as follows:

**I.   Introduction.**

1.   Plaintiff filed suit against the Defendant in a civil action, Suffolk Superior Court, Civil Action No. 2005-01257 (the "State Court Action").

2.   The Defendant hereby removes the State Court Action to the United States District Court for the District of Massachusetts.

**II.   Nature of Suit.**

1.   In Plaintiff's Complaint filed in the State Court Action, the Plaintiff has alleged, *inter alia*, that the Defendant violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691. The Plaintiff has also alleged, *inter alia*, that the Defendant violated the Bank Holding Company Act, 12 U.S.C. § 1972 (1)(B-D).

2.   Although the Plaintiff does not quantify her alleged damages, the Plaintiff has sought to rescind a Guaranty executed by the Plaintiff of the obligations A.M.G. Construction

Company, Inc. to the Defendant, pursuant to two Promissory Notes, one in the original principal amount of $1,600,000.00, and the second in the original principal amount of $1,005,264.46. Hence, the amount in controversy in the State Court Action exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

### III.    Basis for Removal.

1.    Removal is proper because the original jurisdiction for the Plaintiff's claims brought under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, and to the extent there is a private cause of action under the Bank Holding Company Act 12 U.S.C. § 1972, is with the United States District Court for the District of Massachusetts.

### IV.    This Notice of Removal is Procedurally Correct.

1.    The Defendant consents to this removal as reflected by this Notice.

2.    The Defendant has attached an index of exhibits and a list of all counsel of record, including addresses, telephone numbers and parties represented. The exhibits consist of all pleadings, process, and orders served upon such Defendant in the State Court Action as required by 28 U.S.C. 1446(a) and Local Rule 81.1 of the Rules of the District Court of Massachusetts.

3.    The Defendant was first notified of the State Court Action when the Defendant's counsel received a copy of the Summons and Complaint on or about April 1, 2005. Accordingly, the Defendant has removed this action within the time permitted by 28 U.S.C. §1446(b).

4.    Pursuant to Local Rule 81.1(a), the Defendants will promptly request that the Clerk of the Suffolk County Superior Court prepare certified or attested copies of all records of proceedings in the State Court Action, and of all docket entries therein, and the Defendant shall file same within thirty (30) days of filing this Notice of Removal.

5. Venue is proper in this District Court pursuant to 28 U.S.C. §1441(a) because this District and Division embrace Suffolk County, Massachusetts where the State Court Action has been pending.

6. The Defendant will properly file a copy of this Notice of Removal with the Clerk of the State Court in which the State Court Action has been pending and serve all removal documents to all counsel of record. See 28 U.S.C. §1446(d).

7. No act of Congress prohibits the removal of this action.

WHEREFORE, the Defendant, Sovereign Bank, respectfully give notice that the State Court Action has been removed from Suffolk County Superior Court to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §1441, and requests that this Court assume jurisdiction over this lawsuit. The Defendant further requests all such other relief, both general and special, at law and in equity, to which it may show itself to be justly entitled.

SOVEREIGN BANK

By their Attorneys,
RIEMER & BRAUNSTEIN LLP

Dated: April 28, 2005

Dennis E. McKenna, BBO # 556428
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000

## CERTIFICATE OF SERVICE

I, Dennis E. McKenna, hereby certify that on this date, April 28, 2005, I served the foregoing Notice of Removal by causing a copy of same to be delivered by first-class mail, postage prepaid, unless otherwise indicated, to: Michael C. McLaughlin, Esquire, Law Offices of Michael C. McLaughlin, One Beacon Street, 33rd Floor, Boston, Massachusetts 02108.

Dennis E. McKenna

889218.1

- 3 -

## **Index of Documents**

| Document | Exhibit |
|---|---|
| Summons to Sovereign Bank | A |
| Complaint and Demand for Jury Trial | B |
| Motion for Preliminary Injunction | C |
| Memorandum in Support of Plaintiff Mrs. Ann Gagliardi's Motion for Preliminary Injunction | D |
| Affidavit of Ann Gagliardi | E |
| Preliminary Injunction (Proposed) | F |
| List of Counsel of Record | G |

888937.1

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
*Ann Coughlen*

## DEFENDANTS
*Abington Savings Bank*

**(b)** County of Residence of First Listed Plaintiff *United States*
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant *United States*
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

**10859 NG**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☒ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): *15 USC § 1601*

Brief description of cause: *12 USC § 1972*

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions:) JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) _____

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL

   COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___ I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_ II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.      for patent, trademark or copyright cases

   ___ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   _X_ IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   ___ V.    150, 152, 153.

   5 10859 NG

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE
   HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
   COURT?
                                                              YES          NO

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
   PUBLIC INTEREST? (SEE 28 USC §2403)
                                                              YES          NO
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                              YES          NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
   28 USC §2284?
                                                              YES          NO

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
   COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE
   SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                                                              YES          NO

   A.   IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

        EASTERN DIVISION          CENTRAL DIVISION          WESTERN DIVISION

   B.   IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
        GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

        EASTERN DIVISION          CENTRAL DIVISION          WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _____Dennis J. McKenna_____
ADDRESS _____Denner + Brunstein  5 Cmte. Plaza_____
TELEPHONE NO. _____(617) 556-3454       Boston, Ma. 02108_

(Cover sheet local.wpd - 11/27/00)

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 05-1257

_Mrs Ann Gagliardi_ , Plaintiff(s)

v.

_Sovereign Bank_ , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon _Michael C. McLaughlin_ plaintiff's attorney, whose address is _1 Beacon Street, 34th Floor, Boston, MA_ , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at Boston, the _31st_ day of _March_ , in the year of our Lord two thousand _and five_ .

_Michael Joseph Donovan_

Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____,200____, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

_____

Dated:_____, 200____.            _____

**N.B.    TO PROCESS SERVER:–**
PLEASE PLACE **DATE** YOU MAKE SERVICE ON DEFENDANT IN
THIS BOX **ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

_____
|                                        , 200    . |
_____

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No._____

_____, Plff(s).

v.

_____, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

TRIAL COURT
SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.

MRS. ANN GAGLIARDI,                      )
                                         )
                    Plaintiff,           )
                                         )
v.                                       )
                                         )
SOVEREIGN BANK,                          )
                                         )
                    Defendant.           )
_____)

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

This case is about Federal banking law violations, civil rights violations, misrepresentation, deception, and fraud by Sovereign Bank, a large federal savings bank, against Mrs. Ann Gagliardi, Plaintiff, whereby Sovereign illegally obtained a guarantee and a mortgage in violation of federal law. Said guarantee and mortgage and supporting documents are illegal, null and void. Plaintiff Mrs. Ann Gagliardi seeks declaratory judgment from this Court rendering all documents signed by her null and void and further she seeks damages as she is statutorily entitled to.

### PARTIES

1. Plaintiff Mrs. Ann Gagliardi ("Mrs. Gagliardi") is an individual residing at 411 South Avenue, Weston, Middlesex County, Massachusetts.

2.  Defendant Sovereign Bank ("Sovereign") is, upon information and belief, a federal savings bank, organized and existing under the laws of the United States of America, with a usual place of business at 75 State Street, Boston, Suffolk County, Massachusetts.

## FACTS

3.  AMG Construction Company ("AMG") is a corporation organized and existing under the laws of Massachusetts, with the usual place of business 615 Concord Street, Framingham, Middlesex County, Massachusetts. On or about July 30, 2001, AMG, upon information and belief entered into a "revolving line of credit" between itself and Sovereign.

4.  Anthony Gagliardi ("Anthony") is the president of AMG and the son of Mrs. Gagliardi and Antonio Gagliardi.

5.  The revolving line of credit was allegedly memorialized with a line of credit note in the amount of 2 million dollars ("the 2 Million Dollar Note").

6.  Also on or about July 30, 2001, AMG entered into an "equipment line of credit note" in the amount of $200,000.00 ("the $200,000.00 Equipment Line of Credit Note").

7.  Upon information and belief, AMG also entered into a loan and security agreement dated July 30, 2001 ("the Loan and Security Agreement").

8.  Antonio Gagliardi ("Antonio") is the husband of Mrs. Gagliardi and is an individual residing at 411 South Avenue, Weston, Middlesex County, Massachusetts. Upon information and belief, Sovereign claims to have an "unlimited guarantee" of Antonio, signed on July 30, 2001, whereby Antonio guaranteed the debt of AMG.

9. Antonio, an Italian immigrant with a fifth grade Italian education, is a former stonemason now retired.

10. Mrs. Gagliardi at all times relevant to these matters was neither a shareholder, officer nor director of AMG.

11. On or about July 30, 2001, despite the fact that Mrs. Gagliardi had no connection to AMG or to any application for any credit from Sovereign, Sovereign nevertheless required Mrs. Gagliardi and Antonio to sign a non-encumbrance agreement by which Mrs. Gagliardi and Antonio promised not to encumber property located at located at 331 Page Street, Stoughton, Massachusetts, which was owned by Antonio and Mrs. Gagliardi as husband and wife, tenancy by the entirety ("the Stoughton Property"). The Stoughton Property is a commercial property where the income of the property represents the vast majority of Antonio and Mrs. Gagliardi's retirement funds.

12. Upon information and belief, AMG was unable to pay back the 2 Million Dollar Note and was unable to pay back the $200,000.00 Equipment Line of Credit Note.

13. Upon information and belief, Sovereign on several occasions increased the 2 Million Dollar Note and the $200,000.00 Equipment Line of Credit Note until the total combined indebtedness exceeded $2,600,000.000.

14. According to the Loan and Security Agreement between itself and AMG, Sovereign failed to obtain any real estate security. Rather, Sovereign limited its security to receivables of AMG.

15. While Sovereign required the non-encumbrance agreement, from Antonio and Mrs. Gagliardi, it did not obtain a mortgage on the Stoughton Property in 2001.

16. Upon information and belief, Sovereign realized that AMG could not repay the obligations that existed under the 2 Million Dollar Note and the $200,000.00 Equipment Line of Credit Note, because, it had no claims against any real estate as security and AMG had virtually no receivables that could in any significant way offset Sovereign's claim totaling 2.6 million dollars.

17. Upon information and belief, Sovereign under federal banking laws was required to make certain accounting adjustments in connection with the AMG debt because it had become in large part uncollectable. Upon information and belief, such accounting adjustments included the recording of a loss in the amount that could include the entire $2.6 million debt of AMG. This was required because Sovereign had virtually nothing to foreclose on once it realized that AMG could not repay the 2.6 million dollars.

18. Upon information and belief, Sovereign in 2004 began a course of action intended to defraud, mislead, misrepresent the status of the 2.6 million dollar debt not only to Mrs. Gagliardi but to the federal and state banking authorities in order to cause Mrs. Gagliardi to sign an illegal guarantee and a mortgage on the Stoughton Property.

19. The course of action included the drafting of illegal and misrepresentative new loan documents which were intended to fraudulently mislead Mrs. Gagliardi and others so that Sovereign could convert its now worthless loan into an illegally secured real estate loan.

20. Upon information and belief, sometime in 2004 Sovereign had been informed by AMG that AMG could not repay the loan. In addition, during the same time period, AMG lost its ability to secure any bonding for public construction projects which were the primary source of income for AMG. Sovereign was informed by AMG that because

4

of the loss of its bonding capacity AMG would not be able to continue on public construction projects and therefore AMG had lost the vast majority of its income.

21. Upon information and belief, Sovereign was so informed by AMG at or about the time that Sovereign was or had been required under federal and state banking laws and accounting standards to take the loss on its unsecured loans to AMG.

22. Upon information and belief, Sovereign was aware that the so called unlimited guarantee of Antonio was virtually worthless because the only assets of Antonio were held by Antonio and Mrs. Gagliardi as husband and wife, tenancy by the entirety. This fact was always known by Sovereign as demonstrated by the fact that Sovereign drafted and recorded at the Norfolk County Registry of Deeds the non-encumbrance agreement for the Stoughton Property thus putting the world on notice of the tenancy by the entirety form of ownership of the Gagliardis.

23. Sovereign knew it could not enforce the so called unlimited guarantee of Antonio because Sovereign could not effectuate a sale of the Stoughton Property even if Antonio's unlimited guarantee was valid because under Massachusetts law Mrs. Gagliardi retained an undivided interest in the property.

24. Upon information and belief, Sovereign was also aware that it could not collect on the so called unlimited guarantee of Antonio as it related to Antonio's only other property, his home in Weston, Massachusetts, since the home was also owned by Antonio and Mrs. Gagliardi, husband and wife, tenancy by the entirety.

25. Upon information and belief on or about the early spring of 2004, Anthony Gagliardi, president of AMG entered into numerous conversations with Sovereign. Upon information and belief, Anthony repeatedly informed Sovereign that given the financial

condition of AMG it would be virtually impossible to obtain bonding commitments in order to resume construction work. Upon information and belief, Anthony Gagliardi also informed Sovereign that he saw no possibility of the company earning any money for the fiscal year 2004.

26. Sovereign aware that it was without any viable option offered to extend the time for the repayment for the 2.6 million dollars. Sovereign had no option but to do so since there was no collateral to foreclose on it.

27. On or about July 16, 2004, Sovereign required AMG and Antonio and Mrs. Gagliardi to attend a closing at Reimer & Braunstein to sign specific documents which prior to the closing neither Antonio nor Mrs. Gagliardi had ever reviewed, read or analyzed.

28. Sovereign was fully aware that Antonio had extremely limited understanding of English and virtually no understanding of legal documents. Further Sovereign knew that Antonio and Mrs. Gagliardi were not represented by counsel.

29. Sovereign produced misleading, illegal and void documents with the express purpose of causing Antonio and his wife Mrs. Gagliardi to sign documents that violated federal and state law.

30. Included in the documents, signed on or about July 16, 2004, were two notes, one in the amount 1,600,000.00 ("the 1.6 Million Dollar Note") and the other in the amount of 1,005,264.46 ("the 1 Million Dollar Note") which were allegedly signed by AMG thus eliminating by payment in full the Two Million Dollar Line of Credit Note, as amended and the $200,000.00 Equipment Line of Credit Note, as amended.

6

31. The 1.6 Million Note and the 1 Million Dollar Note contain no interest rate, no maturity date, no payment schedule, no repayment amounts on a monthly basis and no reference to the fact that both notes were already in default at the time they were signed on July 16, 2004, nor did they disclose that the alleged 2.6 Million Dollar AMG obligation to Sovereign was in default.

32. Upon information and belief, under federally approved and required banking standards, the 1.6 Million Note and the 1 Million Dollar Note eliminated the prior $2.6 million obligation. To the extent that Antonio's alleged unlimited guarantee was applicable to the 2 Million Line of Credit as amended or the $200,000.00 Line of Credit as amended that applicability was completely and entirely relieved by the signing of the 1.6 Million Dollar Note and the 1 Million Dollar Note.

33. The 1.6 Million Dollar Note and the 1 Million Dollar Note were drafted on July 16, 2004, for the illegal purpose of depicting AMG, as not being in default. Upon information and belief, since the 1.6 Million Dollar Note and the 1 Million Dollar Note made no reference as to the fact that the prior debt had been in default for several years, Sovereign concocted a theory whereby disclosure of the status of the long defaulted AMG loan to banking authorities, could be avoided. In addition, upon information and belief, Sovereign in drafting the 1.6 Million Dollar Note and the 1 Million Dollar Note believed that the appearance of no default would cause a bonding company to consider bonding AMG since a review of the 1.6 Million Dollar Note and the 1 Million Dollar Note suggested that AMG had just been paid a total of 2.6 million dollars by the bank and no default had occurred. In fact, Sovereign did not give, disburse or otherwise transfer 1.6 million or 1 million to AMG on July 16, 2004 or at any time subsequent.

34. The 1.6 Million Dollar Note and the 1 Million Dollar Note were deliberately and misleadingly drafted by Sovereign as evidence of AMG's ability to meets its obligations.

35. Sovereign in support of the 1.6 and 1 Million Dollar Notes drafted and caused to be signed a series of documents violative of federal and state law.

36. Included in these illegal documents is an illegal so called "limited recourse guarantee", dated July 16, 2004, (Mrs. Gagliardi's Guarantee) which Sovereign required Mrs. Gagliardi to sign notwithstanding the fact that Sovereign knew or should have known that such a guarantee violated the Equal Credit Opportunity Act (15 U.S.C. §. 1691) ("ECOA"). At no time did Mrs. Gagliardi seek, request or apply for any credit or any extension of Credit from Sovereign.

37. At no time did Mrs. Gagliardi seek, request or obtain any application for credit from Sovereign.

38. Sovereign specifically required that Mrs. Gagliardi execute and deliver the illegal guarantee.

39. Mrs. Gagliardi's guarantee secured the obligation of her husband Antonio.

40. A component of Mrs. Gagliardi's Guarantee was to ensure that Mrs. Gagliardi could not receive any funds that were owed and remained owed to Mrs. Gagliardi by AMG. As a result Sovereign prevented Mrs. Gagliardi from being paid monies that were owed to her.

41. In addition, Mrs. Gagliardi's Guarantee also required that Mrs. Gagliardi, who was unrelated to AMG by way of employment or ownership, was required, under the terms of the illegal guarantee, to become the "trustee" of the Sovereign's interest in

8

connection with any amounts of money that came to Mrs. Gagliardi as a result of AMG's obligations to Mrs. Gagliardi. This requirement that Mrs. Gagliardi become a trustee for Sovereign was unconscionable and was without consideration.

42. Sovereign, aware of Antonio's lack of understanding and capacity in connection with documents signed by Antonio in the past as well as his lack of capacity in signing the documents at the closing, included a provision in Mrs. Gagliardi's Guarantee in which she guaranteed the 1.6 Million Dollar Note and 1 Million Dollar Note even if her co-guarantor i.e. her husband, Antonio, was incapacitated.

43. Sovereign undertook no credit worthiness analysis of Mrs. Gagliardi as required by ECOA.

44. An illegal mortgage signed by Mrs. Gagliardi and Antonio for the Stoughton Property where said mortgage was given to illegally secure Mrs. Gagliardi's illegal Guarantee of the obligations of her husband. As such not only is Mrs. Gagliardi's Guarantee illegal and unenforceable so is the mortgage on the Stoughton Property.

45. Sovereign, aware that the original 2.6 million dollar debt had been paid off by the 1.6 Million Dollar Note and the 1 Million Dollar Note caused Antonio to sign a document entitled Ratification of Guarantee dated July 16, 2004 whereby Sovereign attempted to cause Antonio to issue a new guarantee of the illegal 1.6 Million and 1 Million Dollar Notes. Said Ratification of Guarantee is in itself unenforceable and against public policy because it purports to bind Antonio into guaranteeing illegal, unenforceable and void documents which violate federal and state law as well as public policy.

46. Sovereign, aware that it had no collateral in the absence of causing these illegal documents to be signed also caused Antonio and Mrs. Gagliardi to further secure her illegal guarantee by obtaining an Assignment of Leases and Rents for the Stoughton Property whereby Sovereign sought to access the retirement funds produced by the Stoughton Property to pay off some portion of the illegal 1.6 Million Dollar Note and the 1 Million Dollar Note. The Assignment of Leases and Rents is illegal, unenforceable and violative of ECOA and state law as well as public policy.

47. Sovereign, in furtherance of its illegal undertaking drafted a document entitled Forbearance Agreement dated July 16, 2004 ("the Forbearance Agreement") which on its face was illegal, void and against public policy and was drafted for the purposes of deceiving not only Mrs. Gagliardi and Antonio but also federal and state banking authorities.

48.   Under the provisions of federal law, Sovereign is required to use "safe and sound banking practices" in making loans, renewals of loans, refinancing or restructuring of loans. The Code of Federal Regulations, 12 CFR 365, Appendix A, requires that such safety and soundness standards must be applied including matters relating to the extension of credit.

49. The Forbearance Agreement is deliberately, deceptively and unfairly drafted in knowing violation of safety and soundness practices in order to give the appearance of normal banking procedure to all but the most sophisticated of readers.

50. Safety and soundness practices would require a lender, prior to the extension of credit, verifying the borrower's ability to repay, evaluating the borrower's business plan and evaluating and approving the borrower's then current credit rating. Such safety and

10

soundness practices, are self evident but nevertheless are required under the federal regulations.

51. Notwithstanding the self evident nature of safety and soundness practices Sovereign supposedly approved the "extension of credit" whereby its own Forbearance Agreement states unequivocally that it has not reviewed a business plan, and therefore in effect acknowledged that it has no basis for reasonably believing that AMG could repay the loan. The Forebearance Agreement states that Sovereign has not determined that AMG's credit was sufficient to be bondable, and therefore had no basis for believing that AMG could derive any income from public construction projects, which was AMG's only significant source of revenue. The Forebearance Agreement contains other provisions which demonstrate there could be no good faith evaluation of the credit worthiness of AMG.

52. The Forbearance Agreement dated August 16, 2004 by its own terms was in multiple material default prior to it even being signed.

53. The Forbearance Agreement contains a provision which states that Sovereign's extension of credit was contingent upon the subsequent submission by AMG of an approved business plan which would demonstrate that AMG has a capacity to repay the loan. Upon information and belief, the business plan which was to be submitted weeks after the signing of the Forbearance Agreement, in fact demonstrated that AMG could not repay the loan. Upon information and belief, the business planner, the financial consultant accepted and approved by Sovereign for the purposes of submitting AMG's business plan, informed Sovereign that AMG could not repay the loan. As a result the Forbearance Agreement was in default prior to it being signed. This information was

already known to Sovereign prior to signing the Forbearance Agreement, and yet not disclosed to Mrs. Gagliardi by Sovereign Bank.

54. The Forbearance Agreement also included provisions whereby Sovereign agreed to lend money to "investors" who would be willing to invest $400,000.00 into AMG and that Sovereign would finance such investment even though such financing would most certainly violate safety and soundness provisions of the Federal Code of Regulations since Sovereign knew that AMG was in default on 2.6 million dollars of debt. The offer to finance "investors" purchases of stock in AMG would by definition require AMG to use the 1.6 Million Dollar Note and the 1 Million Dollar Note as evidence that no default existed even though Sovereign was aware that 2.6 million default was "eliminated" by the signed of the bogus and illegal 1.6 Million Dollar Note and the 1 Million Dollar Note. Since Sovereign knew under safety and soundness standards that Sovereign could never make such loans to investors, then they also knew that the Forbearance Agreement was in default before it was signed.

55. The Forbearance Agreement had another illegal provision whereby it linked the Antonio's Ratification of Guarantee and Mrs. Gagliardi's Guarantee to a loan of $150,000.00 to Antonio for the purpose of an investment in AMG as "equity" provided Antonio applied for the Sovereign loan of $150,000.00 by July 15, 2004. Since Antonio, to the extent he could even read the Forbearance Agreement, which he could not, did not see the Forbearance Agreement until July 16, 2004, he could never have complied with the requirement that he apply for the loan the day before he first saw the Forbearance Agreement. This linking of the Guarantee and the "investment loan" violates provisions of the Bank Holding Company Act, 12 U.S.C. 1972.

12

56. Upon information and belief, Sovereign required Anthony Gagliardi as trustee of the Anthony & Company Realty Trust to issue a mortgage on property located at 615 Concord Street, Framingham, Massachusetts ("the Framingham Property"). The sole beneficiary of the Anthony & Company Realty Trust is Mrs. Ann Gagliardi.

57. Sovereign deliberately included the bogus provisions subsequent to closing, i.e. an acceptable business plan, the of $400,000.00 to investors and the requirement that AMG receive a $5,000,000 (5 Million) bonding capacity could not be met and were not met as required by the Forbearance Agreement. Sovereign was unquestionably aware that AMG's "default" on the 2.6 Million obligation would absolutely prevent any surety from issuing a $5,000,000 bond

58. As a result of all of the above, the 1.6 Million Dollar Note, the 1 Million Dollar Note, the Forbearance Agreement and all supporting documents, including the loan security agreement are void, illegal and against public policy, thus rendering Mrs. Gagliardi's unlimited guarantee of such documents void.

59. Upon information and belief, notwithstanding the language in Mrs. Gagliardi's illegal Guarantee which purports to limit Sovereign's recovery against Mrs. Gagliardi to her share of the proceeds in the Stoughton Property, an undivided interest, and therefore impossible.

## COUNT I

### Equal Credit Opportunity Act (15 U.S.C. §1691)

60. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 58 above and incorporates them by reference as if fully set forth herein.

61. Sovereign, in requiring Mrs. Gagliardi to sign the guarantee, violated her civil rights as protected by the Equal Credit Opportunity Act (15 U.S.C. §1691 et sec.).

62. As a result of Sovereign's actions, Mrs. Gagliardi has been damaged.

## COUNT II
### Fraud In The Inducement Claim Against Sovereign

63. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 61 above and incorporates them by reference as if fully set forth herein.

64. The aforesaid misrepresentations and concealment were made by Sovereign knowingly and with the intent to induce Mrs. Gagliardi to sign and execute the guarantee, mortgage and Assignment of Leases and Rents even though as a result of the aforesaid misrepresentations she could not have understand state and federal law violations contained in such documents.

65. As a result of Sovereign's fraud, Mrs. Gagliardi is entitled to the equitable remedy of rescission of her unlimited guarantee, the mortgage on the Stoughton Property, and the Assignment of Leases and Rents.

## COUNT III
### Misrepresentation Claim Against Sovereign

66. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 64 above and incorporates them by reference as if fully set forth herein.

67. The aforesaid misrepresentations and concealments were made by Sovereign negligently in breach of the duty of good faith and fair dealing owed to Mrs. Gagliardi.

68. As a result of Sovereign's misrepresentations, Mrs. Gagliardi has suffered substantial damages and the contract is voidable or, alternatively, Mrs. Gagliardi is entitled to the equitable remedy of rescission.

## COUNT IV
### Duress Against Sovereign

69. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 67 above and incorporates them by reference as if fully set forth herein.

70. Sovereign wrongfully demanded and required Mrs. Gagliardi to sign documents, including but not limited to personal guarantees, and this wrongful influence actually overcame the freedom of mind and the will of Mrs. Gagliardi.

71. Mrs. Gagliardi involuntarily accepted the terms of Sovereign and circumstances, which were the result of the coercive acts of Sovereign, permitted no other alternative.

72. As a result of Sovereign's actions, Mrs. Gagliardi has suffered substantial damages and the contract is voidable or, alternatively, Mrs. Gagliardi is entitled to the equitable remedy of rescission.

## COUNT V
### Fraud Claim Against Sovereign

73. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 71 above and incorporates them by reference as if fully set forth herein.

74. Sovereign made false and fraudulent representations to Mrs. Gagliardi of material facts, with knowledge of their falsity, including the nature and contents of a writing, by which Mrs. Gagliardi was induced to sign it.

75. Mrs. Gagliardi relied upon such false representations knowingly made by Sovereign and was damaged thereby.

76. Mrs. Gagliardi has suffered substantial damages and the contract is voidable or, alternatively, Mrs. Gagliardi is entitled to the equitable remedy of rescission.

15

## COUNT VI
### M.G.L. Ch. 93A Unfair and Deceptive Practices Claim Against Sovereign

77. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 75 above and incorporates them by reference as if fully set forth herein.

78. Sovereign is engaged in trade or commerce within the meaning of G.L.c. 93A, sec. 1.

79. The acts and practices alleged above constitute unfair or deceptive acts and practices declared unlawful by G.L. c. 93A, sec. 2 and 11, and regulations promulgated by the Attorney General thereunder.

80. Sovereign's use or employment of said acts or practices were willful or knowing violations of G.L.c. 93A.

81. Mrs. Gagliardi has suffered an adverse effect as a result of the use of unfair and deceptive acts or practices by Sovereign as hereinbefore alleged.

## COUNT VII
### Violation of Bank Holding Company Act 12 U.S.C. § 1972(1)(B-D)

82. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 80 above and incorporates them by reference as if fully set forth herein.

83. Sovereign knew or should have known that the requiring of additional guarantees of Mrs. Gagliardi and the linking of the requirement to borrow money for Antonio, is prohibited under the Bank Holding Company Act.

84. Mrs. Gagliardi's guarantee and all other documents, including the Stoughton mortgage and assignment of leases and rents are voidable and Mrs. Gagliardi is entitled to rescission of all documents signed by her.

85. Mrs. Gagliardi has been damaged by the actions of Sovereign.

## COUNT VIII
### Intentional Infliction of Emotional Distress

86. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 84 above and incorporates them by reference as if fully set forth herein.

87. Sovereign's misconduct, acts, omissions, representations and misrepresentations alleged herein, constitutes intentional, extreme and outrageous conduct in reckless disregard of the probability of causing severe and extreme emotional distress.

88. Mrs. Gagliardi has suffered substantial damages.

## JURY DEMAND

Plaintiff Mrs. Gagliardi each hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

Mrs. Ann Gagliardi,
By her counsel,

Dated: March 31, 2005

Michael C. McLaughlin (BBO# 367350)
Law Offices of Michael C. McLaughlin
One Beacon Street, 33rd Floor
Boston, MA 02108
(617) 227-2275

Certificate of Service

hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail by hand on

Michael C. McLaughlin

17

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    TRIAL COURT
                                    SUPERIOR COURT DEPARTMENT
                                    CIVIL ACTION NO. _____

| | |
|---|---|
| MRS. ANN GAGLIARDI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SOVEREIGN BANK, | ) |
| | ) |
| Defendant. | ) |

## MOTION FOR PRELIMINARY INJUNCTION

Now comes the Plaintiff Mrs. Ann Gagliardi ("Mrs. Gagliardi") with this Motion

for Preliminary Injunction pursuant to Mass.R.Civ.P. 65(b) enjoining Sovereign Bank

("Sovereign") from moving forward in connection with foreclosure proceeding on the

property located at 331 Page Street, Stoughton, Massachusetts (the "Stoughton

Property"), as well as enjoining Sovereign from taking any actions or steps including

foreclosure in connection with illegal, and void mortgage, guarantee, and Assignment of

Leases and Rents illegally obtained from Plaintiff Mrs. Gagliardi by Sovereign.

In support thereof:

1. The Stoughton Property is owned by Mrs. Gagliardi and her husband, as husband
   and wife, tenancy by the entirety.

2. The leases and rents earned by the Stoughton Property represent nearly 100% of
   Mrs. Gagliardi and her husband's retirement income. Antonio Gagliardi is a
   retired stonemason with a fifth grade Italian education.

3. Sovereign has commenced foreclosure on both the Framingham and the
   Stoughton Properties.

1

4. In July of 2004, Sovereign, in violation of the Equal Credit Opportunity Act (15 U.S.C 1691 et seq) ("ECOA") required Mrs. Gagliardi to guarantee a loan for the benefit of her husband. Sovereign, in illegally obtaining Mrs. Gagliardi's signature on the guarantee, included specific language which was fashioned in an illegal attempt to avoid the provisions of the ECOA. The guarantee in 2004 of Mrs. Gagliardi was given even though the loan in question was made in 2001.

5. At no time did Mrs. Gagliardi ever request a loan. At no time did she ever fill out any financial information concerning her assets. (See Affidavit of Ann Gagliardi) Therefore, Sovereign may not claim to have detrimentally relied on her assets since Sovereign never asked for nor received financial information from Mrs. Gagliardi and made the loan four years earlier without such financial information.

6. The foreclosure on the Stoughton Property would constitute irreparable harm to Mrs. Gagliardi. In addition, the interference in Mrs. Gagliardi's income resulting from the loss of the lease and rents generated by the Stoughton property, would also be an interference with the "enjoyment" of the land. In exchange for Mrs. Gagliardi signing the illegal guarantee, mortgage and Assignment of Leases and Rents Mrs. Gagliardi received nothing in return. She never received any of the proceeds of the 2.6 million dollars apparently dispersed by Sovereign to AMG in 2001. (See Affidavit of Ann Gagliardi) She had never been an applicant for the 2.6 million dollars in 2001. There was absolutely no consideration supporting Mrs. Gagliardi's signature on the guarantee, mortgage or the Assignment of Leases and Rents.

7. Sovereign cannot allege any irreparable harm. Prior to July 16, 2004, a mere six months ago, Sovereign had already loaned the 2.6 million dollars without the mortgage on the Stoughton Property. The original 2.6 million dollars was apparently lent beginning in 2001. The Stoughton and Framingham Properties, were never components of Sovereign's decision to lend 2.6 million dollars to AMG in 2001. These properties only became relevant in 2004 when Sovereign realized it could not recover on the loan and was facing total loss since there was no collateral and undertook the scheme to get Mrs. Gagliardi's signature, on an illegal guarantee, mortgage and Assignment of Leases and Rents.

8. Since the mortgage on the Stoughton Property was given to secure Mrs. Gagliardi's illegal guarantee, the mortgages are void and unenforceable as a matter of law. (See Memorandum in Support of Preliminary Injunction) The loss of that guarantee and mortgages securing it will not materially effect Sovereign because Mrs. Gagliardi, in the absence of Sovereign's violation of ECOA, would not have incurred any personal liability in connection with her husband's or AMG's debt.

9. Mrs. Gagliardi has demonstrated her likelihood of success on the merits, irreparable harm if an injunction is not issued and that Sovereign will not suffer irreparable harm if the injunction is issues. Public policy requires that if

2

Sovereign at the conclusion of the trial on the merits violated ECOA, the Bank
Holding Company Act, the Code of Federal Regulations, and M.G.L. 93A, that
not only will Mrs. Gagliardi be entitled to maintain the Stoughton Property, she
will also have affirmative claims for damages against Sovereign.  Mrs. Gagliardi
respectfully requests the foreclosure of the Stoughton Property be enjoined until
the trial on the merits can be concluded.

Respectfully submitted,
Mrs. Ann Gagliardi

By her attorney,

Dated: March 31, 2005

Michael C. McLaughlin BBO# 537350
Law Offices of Michael C. McLaughlin
One Beacon Street, 33rd Floor
(617) 227-2275
Boston, MA 02108

Certificate of
hereby certify that a true copy of the above document
was served upon the attorney of each party
by mail/ by hand on March 31. 2005

Michael C. McLaughlin

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    TRIAL COURT
                                    SUPERIOR COURT DEPARTMENT
                                    CIVIL ACTION NO. _____

| | |
|---|---|
| MRS. ANN GAGLIARDI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SOVEREIGN BANK, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF MRS. ANN GAGLIARDI'S MOTION FOR PRELIMINARY INJUNCTION

Now comes the Plaintiff Mrs. Ann Gagliardi ("Mrs. Gagliardi") with this

Memorandum in Support of her Motion for Preliminary Injunction enjoining Sovereign

Bank's ("Sovereign") from moving forward in connection with foreclosure proceeding on

the property located at 331 Page Street, Stoughton, Massachusetts (the "Stoughton

Property"), as well as enjoining Sovereign from taking any actions or steps including

foreclosure in connection with illegal, and void mortgage, guarantee, and Assignment of

Leases and Rents illegally obtained from Plaintiff Mrs. Gagliardi by Sovereign.  The

Stoughton Property is owned by Mrs. Gagliardi and her husband as husband and wife,

tenancy by the entirety.  **The leases and rents earned by the Stoughton Property**

**represent nearly 100% of Mrs. Gagliardi and her husband's retirement income.**

**Antonio Gagliardi is a retired stonemason with a fifth grade Italian education.**

**Therefore the continued actions by Sovereign will result in an extraordinary and**

**irreparable damage and harm to Mrs. Gagliardi.  The actions of Sovereign have**

1

resulted in violations of Mrs. Gagliardi's civil rights under Federal law and in addition Sovereign's actions are void and unenforceable and in addition, all documents signed by Mrs. Gagliardi are void and unenforceable under the provisions of Federal and state law. Therefore Mrs. Gagliardi seeks a preliminary injunction on the actions of Sovereign until this matter can be heard by the Court on its merits.

For the Court's convenience, attached as Exhibit A are the facts as alleged in the Complaint of Mrs. Ann Gagliardi.

### ARGUMENT

In determining whether to grant a preliminary injunction, the Court must consider the balancing test set forth in Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-617 (1980). First, the court must evaluate, in combination, "the moving party's claim of injury and its chance of success on the merits." Id. at 617. If failing to issue the injunction "would subject the moving party to a substantial risk of irreparable harm, this court must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for opposing party." Id. "In the context of a preliminary injunction, the only rights which may be irreparably lost are those not capable of vindication by a final judgment, rendered either at law or in equity." Id. at 617 n. 11. Moreover, in appropriate cases the court should also consider the risk of harm to the public interest. GTE Products Corp. v. Stewart, 414 Mass. 721, 723 (1993); Biotti v. Board of Selectmen of Manchester, 25 Mass. App. Ct. 637, 649 (1988).

2

## Equal Credit Opportunity Act Renders Sovereign's Mortgages Void

The Plaintiff, Mrs. Gagliardi, as demonstrated below, has made a prima facie case particularly as it relates to Sovereign's violation of Federal law.  She is not expected to predict her victory with certainty to survive scrutiny under the preliminary injunction standard. Shammas v. Merchants National Bank, No. 90-12217N, 1990 WL 354452 (D. Mass. November 9, 1990) citing 11 C. Wright & Miller §2948 at 452 (1973). In evaluating Mrs. Gagliardi's claims and the evidence presented, there is a likelihood of success on the merits particularly since Sovereign required Plaintiff to guarantee a loan for the benefit of her husband in violation of the antidiscriminatory provisions of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §1691.  [Plaintiff's other claims include M.G.L. ch. 93A, Intentional Infliction of Emotional Distress, Fraud, Misrepresentation, the Bank Holding Company Act, 12 USCA § 1972 (1)(B-D).]

The ECOA provides that it is unlawful "for any creditor to discriminate against any [credit] applicant with respect to any aspect of a credit transaction on the basis of…marital status." 15 U.S.C. §1691 (a)(1). (Emphasis supplied) Regulations promulgated under the authority of the ECOA state that "[a] creditor shall not require the signature of an applicant's spouse or any other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. §202.7 (d)(1). An applicant is defined under the ECOA as "any person who requests or who has received an extension of credit from a creditor, and…[f]or purposes of §202.7(d), the term includes guarantors, sureties, endorsers and similar parties." 12 C.F.R. §202.2 (e).

3

Mrs. Gagliardi has stated in her Affidavit that she neither sought, asked for or applied for any credit from Sovereign. The civil liability provision in ECOA provides an aggrieved applicant with an affirmative cause of action, which must be brought no later than two years from the date of the occurrence of the violation. 15 U.S.C. §1691e (f). In addition, the ECOA grants the court of competent jurisdiction the authority to "[g]rant such equitable and declaratory relief as necessary to enforce the requirements imposed under [ECOA]." 15 U.S.C. sec 1691 (c).

The Statute of Limitations for bringing an ECOA claim is two years from the date of the alleged violation. The initial loan transaction in which the bank illegally demanded a Non-Encumbrance Agreement occurred in 2001. The Non-Encumbrance Agreement may well be a "credit instrument" since it was illegal given as a guarantee that the Stoughton Property would back the original debt. Accordingly the violation under ECOA as it relates to the Non-Encumbrance Agreement is more than two years before this Motion. See Ramsdell v. Bowles, 64 F.3d 5, 9 (1st Cir 1995); Farrell v. Bank of New Hampshire Portsmouth, 929 F.2d 871, 873 (1st Cir.). To the extent that the Non-Encumbrance Agreement is a violation of ECOA, the raising of ECOA is not in the nature of an affirmative claim but rather as a defense of any attempt to enforce the Non-Encumbrance Agreement.

ECOA is always an affirmative defense to the enforceability to the mortgages which are the subject of pending foreclosure proceeding on the Stoughton Property. Regardless of the Statute of Limitations, ECOA is also a cause of action for damages in connection with the violation of Mrs. Gagliardi's civil rights (ECOA is a civil rights statute). Because said mortgages were allegedly given on July 16, 2004, there is no

4

statute of limitations issue for an affirmative claim.  Notwithstanding the absence of a

statute of limitation issue as it relates to the Stoughton mortgage and Mrs. Gagliardi's

guarantee, it is worth considering that Massachusetts and other state courts as well as

Federal courts have extensively considered the importance of ECOA as a defense <u>even</u>

<u>when the statute of limitations has run</u>.  In this regard the Court should consider the

following analysis:

> Congress…in enacting ECOA…intended that creditors not affirmatively
> benefit from proscribed acts of credit discrimination.  **To permit
> creditors…especially sophisticated institutions…to affirmatively
> benefit by disregarding the requirements of ECOA would seriously
> undermine the Congressional Intent to eradicate gender and marital
> status based credit discrimination.**

<u>Integra Bank/Pittsburgh</u>, 389 F.Supp. at 329 (1993) (emphasis supplied).  See also, <u>Sony</u>

<u>Electronics, Inc., v. Putnam</u>, 906 F.Supp. 228, 229 (D.N.J. 1995); <u>FDIC v. Medmark</u>, 897

F.Supp. 511, 514 (D. Kan. 1995); <u>American Security Bank v. York</u>, 91-921, 1992 WL

237375, at *8 (E.D. Mich. 1994); <u>Mundaca Inv. Corp. v. Emory</u>, 674 A2d 923, 925 (Me.

1996); <u>FDIC v. Notis</u>, 602 A2d 1164, 1165-1166 (Me. 1992).  See also <u>Kodis v. State</u>

<u>Street Bank and Trust Company</u>, Civil Action No. 96-1637, Grabauj attached.

The interpretation of these courts focuses on ECOA's inclusion of a broad

remedial provision.  These courts have concluded that "…an offending creditor should

not be permitted to look for payment to parties who but for the ECOA violation, would

not have incurred personal liability on the underlying debt in the first instance." <u>Integra</u>

<u>Bank/Pittsburgh</u>, 389 F.Supp. at 329 (1993).  Obviously, before July 16, 2004, Sovereign

had loaned over 2.6 million dollars <u>without</u> a guarantee of Mrs. Gagliardi and the

mortgage on the Stoughton Property.  Obviously, Sovereign had loaned over 2.6 million

dollars to AMG without securing it with a mortgage on the Framingham and Stoughton

Properties. Since the mortgage on the Stoughton Property was given to secure Mrs. Gagliardi's Guarantee, the loss of the guarantee and the mortgage securing it will not materially effect Sovereign because Mrs. Gagliardi, in the absence of Sovereign's violation of ECOA, would not have incurred any personal liability in connection with her husband's or AMG's debt.

Since Mrs. Gagliardi Gagliardi has a valid defense and is likely to obtain relief from her obligations under the guarantee, the mortgage and the Assignment of Leases and Rents, then a preliminary injunction should be granted. Having granted the preliminary injunction the Court is not necessarily determining that the underlying debt of AMG is necessarily void. That issue is also the subject of this litigation, however this Court can clearly issue an injunction without having to decide the validity of AMG's obligations.

Issuing the injunction will simply put Sovereign in no worse than it was in prior to the alleged signing of the illegal documents on July 16, 2004. As the court in Integra commented:

> [t]his rule places a creditor in no worse position than if it had adhered to the law when the credit transaction had occurred. A creditor may not claim to have relied factually upon a guarantor's assets if it was never requested nor received financial information regarding them. Further a creditor may not claim legal reliance on a signature that it was illegally required in the first place. Id. at 329.

As can be seen by the affidavit of Mrs. Gagliardi at no time did she ever request a loan. At no time did she ever fill out any financial information concerning her assets. Therefore, Sovereign may not claim to have detrimentally relied on her assets since Sovereign never asked for nor received financial information from Mrs. Gagliardi.

## PLAINTIFF MUST PREVAIL BECAUSE SOVEREIGN NEVER COMPLIED WITH ECOA REQUIREMENTS CONCERNING "CREDITWORTHINESS"

6

The "creditworthiness" of the applicant is an important component of ECOA. In order to demonstrate that Sovereign met the requirements of the statute, Sovereign would have to produce a creditworthiness analysis showing that AMG, as the applicant for credit, was not creditworthy. Further, the analysis would have to show that AMG and Antonio (Plaintiff's husband), and Anthony (Plaintiff's son), were not creditworthy for the credit being extended. The problem for Sovereign in this regard is that apparently AMG was already in default. Sovereign "hid" the defaulted loan by creating the 1.6 Million Dollar Note and the 1 Million Dollar Note which has no default language contained therein. In other words, Sovereign concocted a loan transaction under which normal creditworthy analysis was never even considered. Therefore, the creditworthiness analysis of Mrs. Gagliardi never took place. The facts outlined above demonstrate the extraordinary lengths that Sovereign went to "hide" their unsecured defaulted loan. Sovereign undertook to make two new loans (1.6 Million Dollar Note and 1 Million Dollar Note) on July 16, 2004, which "apparently" paid off the 2.6 million dollars already in default. Sovereign is now estopped from trying to claim that AMG was not creditworthy for those newly entered into notes for July 16, 2004. To do so, would in fact be an admission of their duplicitous and illegal scheme.

A precise standard for determining creditworthiness is not provided by ECOA or its regulations. "It appears that a creditor is permitted to make a determination by its own standards, as long as they are nondiscriminating with regard to the applicants marital status." Shammas v. Merchants National Bank, No. 90-12217N, 1990 WL 354452 at *3 (D. Mass. 1990). "The legislative history of ECOA, however, does state that creditors are expected to use 'valid and reasonable criteria' in their evaluation of

creditworthiness." Id. quoting Haynes v. Bank of Wedowee, 634 F.2d. 266, 270 (5th Cir. 1981) citing S. Rep. No. 278, 93rd Cong., 1st Sess. (1973). Kodis at p. 11. This "valid and reasonable criteria" is further required by the Federal Reserve Bank rules requiring safety and soundness in the lending and underwriting requirement for all federally insured banks. 12 CFR 365, Appendix A. Again, Sovereign, in attempting to justify the illegal signature of Mrs. Gagliardi would in effect be admitting that without her signature the grant of credit would have been unsafe and unsound. The problem for Sovereign is that it already knew that the loan was unsafe and unsound and it never undertook an evaluation of what "creditworthiness" Mrs. Gagliardi would have brought to the underwriting of the loan, since she never sought, applied for or requested the so called extension of credit.

## PUBLIC POLICY REQUIRES AN INJUNCTION

It is worth considering that the United States Congress has demonstrated its concern about bank documents which are part of a attempt to conceal or cover up material facts that exist in a particular loan arrangement. 18 U.S.C.A. §101 makes it a crime for the bank, or anyone, to knowingly and willfully falsify, conceal or cover-up by trick, scheme or device, a material fact in a loan:

> Whoever in any manner within the jurisdiction of any department or agency of the United States knowingly or willfully, falsifies, conceals or covers ups by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any faults, fictitious or fraudulent statement or entry shall be fined not more than $10,000 or imprisoned not more than 5 years or both.

In the instant case, it appears clear that the Forbearance Agreement, the 1.6 Million Dollar Note, the 1 Million Dollar Note, all were drafted, issued and signed as a

8

result of a cover up concocted by Sovereign to conceal material facts concerning the debt Sovereign's actions amounts to an obvious and deliberate attempt to avoid safety and soundness standards, in order to avoid taking a loss on a clearly defaulted loan. In addition, it appears that there is a substantial violation of the Banking Holding Company Act 12 USC §1972 as a it relates to Sovereign's illegal and inappropriate "tying" the requirement of Mrs. Gagliardi's Guarantee to the possible loan to Antonio of $150,000 as a "investment" in AMG which Sovereign illegally offered. See Complaint paragraph 55. Mrs. Gagliardi has stated a cause of action against Sovereign for allegedly tying the provision of her guarantee to its Forbearance Agreement. See Nordick Bank PLC v. Trend Group Limited, 619 F. Supp. 542, 555 (D.C. N.Y. 1985). Congress has determined that "tying" a requirement of additional guarantees to the offering of bank product services or credit may be illegal. In addition, to these violations, the two notes are intended to cover up by trick and scheme, the material fact that AMG had been in default for many months, if not years. Equally clear is the fact that Sovereign's entire scheme included obtaining the illegal guarantee of Mrs. Gagliardi as well as the illegal mortgage and Assignment of Leases and Rents. Public policy require that the enforcement of documents associated with Sovereign's illegal efforts be void. Naturally, this would exist even if the ECOA defense were not available to Mrs. Gagliardi, which of course it is.

## RISK OF HARM ANALYSIS

As part of this Court's analysis of the preliminary injunction test, the Court must balance the risk of harm to Mrs. Gagliardi against any similar risk of irreparable harm which granting the injunction would create for Sovereign. Irreparable injury has been

9

defined as " a loss of rights that cannot be vindicated should [the moving party] prevail after a full hearing on the merits." Packing Indus. Group, Inc., 380 Mass at 616. The taking and sale of person's real property which is inherently unique is almost always irreparable harm. Shammus, 1990 WL 3544552 at *5. "as a general rule, interference with the enjoyment or the possession of land is considered 'irreparable' since land is viewed as a unique commodity for which monetary compensation is an inadequate substitute." Id. at quoting Pelfresne v. Village of Williams Bay, 865 F.2d. 877, 883 (7th Cir. 1989) citing United Church of the Medical Center v. Medical Center Comm'n, 689 F.2d 693, 701 (7th Cir. 1982). By this standard the foreclosure on the Stoughton Property would constitute irreparable harm. In addition, the interference in Mrs. Gagliardi's income resulting from the loss of the lease and rents generated by the Stoughton property, would also be an interference with the "enjoyment" of the land. Conversely, Sovereign cannot allege any irreparable harm. Prior to July 16, 2004, a mere six months ago, Sovereign had already loaned the 2.6 million dollars without the mortgage on the Stoughton Property. The original 2.6 million dollars was apparently lent beginning in 2001. The Stoughton and Framingham Properties, were never components of Sovereign's decision to lend 2.6 million dollars to AMG in 2001. These properties only became relevant in 2004 when Sovereign realized it could not recover on the loan and was facing total loss since there was no collateral and undertook the scheme to get Mrs. Gagliardi's signature, on an illegal guarantee, mortgage and Assignment of Leases and Rents. **It must be remembered that in exchange for Mrs. Gagliardi signing the illegal guarantee, mortgage and Assignment of Leases and Rents Mrs. Gagliardi received nothing in return. She never received any of the proceeds of the 2.6 million**

**dollars apparently dispersed by Sovereign to AMG. She had never been an applicant for the 2.6 million dollars in 2001, nor for the new notes of 1.6 Million and 1 Million Dollar Notes in 2004. There was absolutely no consideration supporting Mrs. Gagliardi's signature on the guarantee, mortgage or the Assignment of Leases and Rents.** It is worth again considering the Integra court's language, which states that, Congress, in enacting ECOA, intended that creditors not affirmatively benefit from the proscribed acts, it can not be denied that Sovereign can only achieve a "benefit" if it can liquidate Mrs. Gagliardi's property. It can not be denied that virtually every other aspect of Sovereign's loan to AMG is functionally unsecured and uncollectable. In effect, Sovereign is attempting to affirmatively benefit by their decision to violate ECOA and numerous other banking laws in the blatant and frantic attempt to collateralize a loan that had already been in default for many years. This is exactly what Congress intended to prevent.

## CONCLUSION

Mrs. Gagliardi has demonstrated her likelihood success on the merits, irreparable harm if an injunction is not issued and that Sovereign will not suffer irreparable harm if the injunction is issues. Public policy requires that if Sovereign at the conclusion of the trial on the merits violated ECOA, the Bank Holding Company Act, the Code of Federal Regulations, and M.G.L. 93A, that not only will Mrs. Gagliardi be entitled to maintain the Stoughton Property, she will also have affirmative claims for damages against Sovereign. Mrs. Gagliardi respectfully requests the foreclosure of the Stoughton Property be enjoined until the trial on the merits can be concluded.

11

Respectfully Submitted,

Mrs. Ann Gagliardi,
By her counsel,

Dated: March 31, 2005

Michael C. McLaughlin (BBO# 367350)
Law Offices of Michael C. McLaughlin
One Beacon Street, 33rd Floor
Boston, MA 02108
(617) 227-2275

Certificate of Service

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail by hand on

Michael C. McLaughlin

12

## EXHIBIT A

## PARTIES

1.  Plaintiff Mrs. Ann Gagliardi ("Mrs. Gagliardi") is an individual residing at 411 South Avenue, Weston, Middlesex County, Massachusetts.

2.  Defendant Sovereign Bank ("Sovereign") is, upon information and belief, a federal savings bank, organized and existing under the laws of the United States of America, with a usual place of business at 75 State Street, Boston, Suffolk County, Massachusetts.

## FACTS

3.  AMG Construction Company ("AMG") is a corporation organized and existing under the laws of Massachusetts, with the usual place of business 615 Concord Street, Framingham, Middlesex County, Massachusetts. On or about July 30, 2001, AMG, upon information and belief entered into a "revolving line of credit" between itself and Sovereign.

4.  Anthony Gagliardi ("Anthony") is the president of AMG and the son of Mrs. Gagliardi and Antonio Gagliardi.

5.  The revolving line of credit was allegedly memorialized with a line of credit note in the amount of 2 million dollars ("the 2 Million Dollar Note").

6.  Also on or about July 30, 2001, AMG entered into an "equipment line of credit note" in the amount of $200,000.00 ("the $200,000.00 Equipment Line of Credit Note").

7.  Upon information and belief, AMG also entered into a loan and security agreement dated July 30, 2001 ("the Loan and Security Agreement").

1

8.  Antonio Gagliardi ("Antonio") is the husband of Mrs. Gagliardi and is an individual residing at 411 South Avenue, Weston, Middlesex County, Massachusetts. Upon information and belief, Sovereign claims to have an "unlimited guarantee" of Antonio, signed on July 30, 2001, whereby Antonio guaranteed the debt of AMG.

9.  Antonio, an Italian immigrant with a fifth grade Italian education, is a former stonemason now retired.

10. Mrs. Gagliardi at all times relevant to these matters was neither a shareholder, officer nor director of AMG.

11. On or about July 30, 2001, despite the fact that Mrs. Gagliardi had no connection to AMG or to any application for any credit from Sovereign, Sovereign nevertheless required Mrs. Gagliardi and Antonio to sign a non-encumbrance agreement by which Mrs. Gagliardi and Antonio promised not to encumber property located at located at 331 Page Street, Stoughton, Massachusetts, which was owned by Antonio and Mrs. Gagliardi as husband and wife, tenancy by the entirety ("the Stoughton Property"). The Stoughton Property is a commercial property where the income of the property represents the vast majority of Antonio and Mrs. Gagliardi's retirement funds.

12. Upon information and belief, AMG was unable to pay back the 2 Million Dollar Note and was unable to pay back the $200,000.00 Equipment Line of Credit Note.

13. Upon information and belief, Sovereign on several occasions increased the 2 Million Dollar Note and the $200,000.00 Equipment Line of Credit Note until the total combined indebtedness exceeded $2,600,000.000.

2

14. According to the Loan and Security Agreement between itself and AMG, Sovereign failed to obtain any real estate security. Rather, Sovereign limited its security to receivables of AMG.

15. While Sovereign required the non-encumbrance agreement, from Antonio and Mrs. Gagliardi, it did not obtain a mortgage on the Stoughton Property in 2001.

16. Upon information and belief, Sovereign realized that AMG could not repay the obligations that existed under the 2 Million Dollar Note and the $200,000.00 Equipment Line of Credit Note, because, it had no claims against any real estate as security and AMG had virtually no receivables that could in any significant way offset Sovereign's claim totaling 2.6 million dollars.

17. Upon information and belief, Sovereign under federal banking laws was required to make certain accounting adjustments in connection with the AMG debt because it had become in large part uncollectable. Upon information and belief, such accounting adjustments included the recording of a loss in the amount that could include the entire $2.6 million debt of AMG. This was required because Sovereign had virtually nothing to foreclose on once it realized that AMG could not repay the 2.6 million dollars.

18. Upon information and belief, Sovereign in 2004 began a course of action intended to defraud, mislead, misrepresent the status of the 2.6 million dollar debt not only to Mrs. Gagliardi but to the federal and state banking authorities in order to cause Mrs. Gagliardi to sign an illegal guarantee and a mortgage on the Stoughton Property.

19. The course of action included the drafting of illegal and misrepresentative new loan documents which were intended to fraudulently mislead Mrs. Gagliardi and others

3

so that Sovereign could convert its now worthless loan into an illegally secured real estate loan.

20. Upon information and belief, sometime in 2004 Sovereign had been informed by AMG that AMG could not repay the loan. In addition, during the same time period, AMG lost its ability to secure any bonding for public construction projects which were the primary source of income for AMG. Sovereign was informed by AMG that because of the loss of its bonding capacity AMG would not be able to continue on public construction projects and therefore AMG had lost the vast majority of its income.

21. Upon information and belief, Sovereign was so informed by AMG at or about the time that Sovereign was or had been required under federal and state banking laws and accounting standards to take the loss on its unsecured loans to AMG.

22. Upon information and belief, Sovereign was aware that the so called unlimited guarantee of Antonio was virtually worthless because the only assets of Antonio were held by Antonio and Mrs. Gagliardi as husband and wife, tenancy by the entirety. This fact was always known by Sovereign as demonstrated by the fact that Sovereign drafted and recorded at the Norfolk County Registry of Deeds the non-encumbrance agreement for the Stoughton Property thus putting the world on notice of the tenancy by the entirety form of ownership of the Gagliardis.

23. Sovereign knew it could not enforce the so called unlimited guarantee of Antonio because Sovereign could not effectuate a sale of the Stoughton Property even if Antonio's unlimited guarantee was valid because under Massachusetts law Mrs. Gagliardi retained an undivided interest in the property.

4

24. Upon information and belief, Sovereign was also aware that it could not collect on the so called unlimited guarantee of Antonio as it related to Antonio's only other property, his home in Weston, Massachusetts, since the home was also owned by Antonio and Mrs. Gagliardi, husband and wife, tenancy by the entirety.

25. Upon information and belief on or about the early spring of 2004, Anthony Gagliardi, president of AMG entered into numerous conversations with Sovereign. Upon information and belief, Anthony repeatedly informed Sovereign that given the financial condition of AMG it would be virtually impossible to obtain bonding commitments in order to resume construction work. Upon information and belief, Anthony Gagliardi also informed Sovereign that he saw no possibility of the company earning any money for the fiscal year 2004.

26. Sovereign aware that it was without any viable option offered to extend the time for the repayment for the 2.6 million dollars. Sovereign had no option but to do so since there was no collateral to foreclose on it.

27. On or about July 16, 2004, Sovereign required AMG and Antonio and Mrs. Gagliardi to attend a closing at Reimer & Braunstein to sign specific documents which prior to the closing neither Antonio nor Mrs. Gagliardi had ever reviewed, read or analyzed.

28. Sovereign was fully aware that Antonio had extremely limited understanding of English and virtually no understanding of legal documents. Further Sovereign knew that Antonio and Mrs. Gagliardi were not represented by counsel.

29. Sovereign produced misleading, illegal and void documents with the express purpose of causing Antonio and his wife Mrs. Gagliardi to sign documents that violated federal and state law.

30. Included in the documents, signed on or about July 16, 2004, were two notes, one in the amount 1,600,000.00 ("the 1.6 Million Dollar Note") and the other in the amount of 1,005,264.46 ("the 1 Million Dollar Note") which were allegedly signed by AMG thus eliminating by payment in full the Two Million Dollar Line of Credit Note, as amended and the $200,000.00 Equipment Line of Credit Note, as amended.

31. The 1.6 Million Note and the 1 Million Dollar Note contain no interest rate, no maturity date, no payment schedule, no repayment amounts on a monthly basis and no reference to the fact that both notes were already in default at the time they were signed on July 16, 2004, nor did they disclose that the alleged 2.6 Million Dollar AMG obligation to Sovereign was in default.

32. Upon information and belief, under federally approved and required banking standards, the 1.6 Million Note and the 1 Million Dollar Note eliminated the prior $2.6 million obligation. To the extent that Antonio's alleged unlimited guarantee was applicable to the 2 Million Line of Credit as amended or the $200,000.00 Line of Credit as amended that applicability was completely and entirely relieved by the signing of the 1.6 Million Dollar Note and the 1 Million Dollar Note.

33. The 1.6 Million Dollar Note and the 1 Million Dollar Note were drafted on July 16, 2004, for the illegal purpose of depicting AMG, as not being in default. Upon information and belief, since the 1.6 Million Dollar Note and the 1 Million Dollar Note made no reference as to the fact that the prior debt had been in default for several years,

6

Sovereign concocted a theory whereby disclosure of the status of the long defaulted

AMG loan to banking authorities, could be avoided. In addition, upon information and

belief, Sovereign in drafting the 1.6 Million Dollar Note and the 1 Million Dollar Note

believed that the appearance of no default would cause a bonding company to consider

bonding AMG since a review of the 1.6 Million Dollar Note and the 1 Million Dollar

Note suggested that AMG had just been paid a total of 2.6 million dollars by the bank and

no default had occurred. In fact, Sovereign did not give, disburse or otherwise transfer

1.6 million or 1 million to AMG on July 16, 2004 or at any time subsequent.

34. The 1.6 Million Dollar Note and the 1 Million Dollar Note were deliberately

and misleadingly drafted by Sovereign as evidence of AMG's ability to meets its

obligations.

35. Sovereign in support of the 1.6 and 1 Million Dollar Notes drafted and caused

to be signed a series of documents violative of federal and state law.

36. Included in these illegal documents is an illegal so called "limited recourse

guarantee", dated July 16, 2004, (Mrs. Gagliardi's Guarantee) which Sovereign required

Mrs. Gagliardi to sign notwithstanding the fact that Sovereign knew or should have

known that such a guarantee violated the Equal Credit Opportunity Act (15 U.S.C. §.

1691) ("ECOA"). At no time did Mrs. Gagliardi seek, request or apply for any credit or

any extension of Credit from Sovereign.

37. At no time did Mrs. Gagliardi seek, request or obtain any application for credit

from Sovereign.

38. Sovereign specifically required that Mrs. Gagliardi execute and deliver the

illegal guarantee.

39. Mrs. Gagliardi's guarantee secured the obligation of her husband Antonio.

40. A component of Mrs. Gagliardi's Guarantee was to ensure that Mrs. Gagliardi could not receive any funds that were owed and remained owed to Mrs. Gagliardi by AMG. As a result Sovereign prevented Mrs. Gagliardi from being paid monies that were owed to her.

41. In addition, Mrs. Gagliardi's Guarantee also required that Mrs. Gagliardi, who was unrelated to AMG by way of employment or ownership, was required, under the terms of the illegal guarantee, to become the "trustee" of the Sovereign's interest in connection with any amounts of money that came to Mrs. Gagliardi as a result of AMG's obligations to Mrs. Gagliardi. This requirement that Mrs. Gagliardi become a trustee for Sovereign was unconscionable and was without consideration.

42. Sovereign, aware of Antonio's lack of understanding and capacity in connection with documents signed by Antonio in the past as well as his lack of capacity in signing the documents at the closing, included a provision in Mrs. Gagliardi's Guarantee in which she guaranteed the 1.6 Million Dollar Note and 1 Million Dollar Note even if her co-guarantor i.e. her husband, Antonio, was incapacitated.

43. Sovereign undertook no credit worthiness analysis of Mrs. Gagliardi as required by ECOA.

44. An illegal mortgage signed by Mrs. Gagliardi and Antonio for the Stoughton Property where said mortgage was given to illegally secure Mrs. Gagliardi's illegal Guarantee of the obligations of her husband. As such not only is Mrs. Gagliardi's Guarantee illegal and unenforceable so is the mortgage on the Stoughton Property.

8

45. Sovereign, aware that the original 2.6 million dollar debt had been paid off by the 1.6 Million Dollar Note and the 1 Million Dollar Note caused Antonio to sign a document entitled Ratification of Guarantee dated July 16, 2004 whereby Sovereign attempted to cause Antonio to issue a new guarantee of the illegal 1.6 Million and 1 Million Dollar Notes. Said Ratification of Guarantee is in itself unenforceable and against public policy because it purports to bind Antonio into guaranteeing illegal, unenforceable and void documents which violate federal and state law as well as public policy.

46. Sovereign, aware that it had no collateral in the absence of causing these illegal documents to be signed also caused Antonio and Mrs. Gagliardi to further secure her illegal guarantee by obtaining an Assignment of Leases and Rents for the Stoughton Property whereby Sovereign sought to access the retirement funds produced by the Stoughton Property to pay off some portion of the illegal 1.6 Million Dollar Note and the 1 Million Dollar Note. The Assignment of Leases and Rents is illegal, unenforceable and violative of ECOA and state law as well as public policy.

47. Sovereign, in furtherance of its illegal undertaking drafted a document entitled Forbearance Agreement dated July 16, 2004 ("the Forbearance Agreement") which on its face was illegal, void and against public policy and was drafted for the purposes of deceiving not only Mrs. Gagliardi and Antonio but also federal and state banking authorities.

48. Under the provisions of federal law, Sovereign is required to use "safe and sound banking practices" in making loans, renewals of loans, refinancing or restructuring of loans. The Code of Federal Regulations, 12 CFR 365, Appendix A, requires that such

safety and soundness standards must be applied including matters relating to the extension of credit.

49. The Forbearance Agreement is deliberately, deceptively and unfairly drafted in knowing violation of safety and soundness practices in order to give the appearance of normal banking procedure to all but the most sophisticated of readers.

50. Safety and soundness practices would require a lender, prior to the extension of credit, verifying the borrower's ability to repay, evaluating the borrower's business plan and evaluating and approving the borrower's then current credit rating. Such safety and soundness practices, are self evident but nevertheless are required under the federal regulations.

51. Notwithstanding the self evident nature of safety and soundness practices Sovereign supposedly approved the "extension of credit" whereby its own Forbearance Agreement states unequivocally that it has not reviewed a business plan, and therefore in effect acknowledged that it has no basis for reasonably believing that AMG could repay the loan. The Forebearance Agreement states that Sovereign has not determined that AMG's credit was sufficient to be bondable, and therefore had no basis for believing that AMG could derive any income from public construction projects, which was AMG's only significant source of revenue. The Forebearance Agreement contains other provisions which demonstrate there could be no good faith evaluation of the credit worthiness of AMG.

52. The Forbearance Agreement dated August 16, 2004 by its own terms was in multiple material default prior to it even being signed.

10

53. The Forbearance Agreement contains a provision which states that Sovereign's extension of credit was contingent upon the subsequent submission by AMG of an approved business plan which would demonstrate that AMG has a capacity to repay the loan. Upon information and belief, the business plan which was to be submitted weeks after the signing of the Forbearance Agreement, in fact demonstrated that AMG could not repay the loan. Upon information and belief, the business planner, the financial consultant accepted and approved by Sovereign for the purposes of submitting AMG's business plan, informed Sovereign that AMG could not repay the loan. As a result the Forbearance Agreement was in default prior to it being signed. This information was already known to Sovereign prior to signing the Forbearance Agreement, and yet not disclosed to Mrs. Gagliardi by Sovereign Bank.

54. The Forbearance Agreement also included provisions whereby Sovereign agreed to lend money to "investors" who would be willing to invest $400,000.00 into AMG and that Sovereign would finance such investment even though such financing would most certainly violate safety and soundness provisions of the Federal Code of Regulations since Sovereign knew that AMG was in default on 2.6 million dollars of debt. The offer to finance "investors" purchases of stock in AMG would by definition require AMG to use the 1.6 Million Dollar Note and the 1 Million Dollar Note as evidence that no default existed even though Sovereign was aware that 2.6 million default was "eliminated" by the signed of the bogus and illegal 1.6 Million Dollar Note and the 1 Million Dollar Note. Since Sovereign knew under safety and soundness standards that Sovereign could never make such loans to investors, then they also knew that the Forbearance Agreement was in default before it was signed.

11

55. The Forbearance Agreement had another illegal provision whereby it linked the Antonio's Ratification of Guarantee and Mrs. Gagliardi's Guarantee to a loan of $150,000.00 to Antonio for the purpose of an investment in AMG as "equity" provided Antonio applied for the Sovereign loan of $150,000.00 by July 15, 2004. Since Antonio, to the extent he could even read the Forbearance Agreement, which he could not, did not see the Forbearance Agreement until July 16, 2004, he could never have complied with the requirement that he apply for the loan the day before he first saw the Forbearance Agreement. This linking of the Guarantee and the "investment loan" violates provisions of the Bank Holding Company Act, 12 U.S.C. 1972.

56. Upon information and belief, Sovereign required Anthony Gagliardi as trustee of the Anthony & Company Realty Trust to issue a mortgage on property located at 615 Concord Street, Framingham, Massachusetts ("the Framingham Property"). The sole beneficiary of the Anthony & Company Realty Trust is Mrs. Ann Gagliardi.

57. Sovereign deliberately included the bogus provisions subsequent to closing, i.e. an acceptable business plan, the of $400,000.00 to investors and the requirement that AMG receive a $5,000,000 (5 Million) bonding capacity could not be met and were not met as required by the Forbearance Agreement. Sovereign was unquestionably aware that AMG's "default" on the 2.6 Million obligation would absolutely prevent any surety from issuing a $5,000,000 bond

58. As a result of all of the above, the 1.6 Million Dollar Note, the 1 Million Dollar Note, the Forbearance Agreement and all supporting documents, including the loan security agreement are void, illegal and against public policy, thus rendering Mrs. Gagliardi's unlimited guarantee of such documents void.

12

59. Upon information and belief, notwithstanding the language in Mrs. Gagliardi's illegal Guarantee which purports to limit Sovereign's recovery against Mrs. Gagliardi to her share of the proceeds in the Stoughton Property, an undivided interest, and therefore impossible.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    TRIAL COURT
                                               SUPERIOR COURT DEPARTMENT
                                               CIVIL ACTION NO.

---

MRS. ANN GAGLIARDI,                    )
                                       )
                 Plaintiff,            )
                                       )
v.                                     )
                                       )
SOVEREIGN BANK,                        )
                                       )
                 Defendant.            )
_____)

## THE AFFIDAVIT OF ANN GAGLIARDI

I, Ann Gagliardi, do state under oath the following:

1.  I am the Plaintiff in the above-referenced matter and I reside at 411 South Avenue, Weston, Massachusetts.

2.  I am married to Antonio Gagliardi.

3.  I am the mother of Anthony Gagliardi.

4.  Sometime shortly before July 16, 2004, I was informed that Sovereign Bank, a lender to the company run by my son, known as AMG, required that I attend a meeting at the Law Firm of Riemer & Braunstein on July 16, 2004.

5.  Upon information and belief, my husband Antonio had guaranteed the prior debt of AMG.

6.  I was not an employee of AMG, nor was I an officer, director or shareholder of AMG.

7.  Prior to attending the meeting at Riemer & Braunstein I had not engaged any attorney to represent my interests since I was unaware I needed legal representation.

8.  At the meeting, neither I nor my husband were represented by counsel.

9.  At the meeting, my son Anthony was represented by an attorney by the name of Ed Quinlan.

10. Prior to the meeting, to the best of my recollection, I had never spoken with Ed Quinlan, other than perhaps meeting him at some social event.

11. At the meeting, an attorney from Riemer & Braunstein instructed me to sign a document which I am informed was a guarantee, and to sign a mortgage on property owned by my husband and myself located at 331 Page Street, Stoughton, Massachusetts (the "Stoughton Property").

12. The Stoughton Property is owned by my husband and myself, husband and wife tenancy by the entirety.

13. The income from the Stoughton Property is my husband's retirement income. It is also my retirement income.

14. At no time did I ever apply for any loan from Sovereign Bank. At no time did I ever complete an application for a loan, complete a financial statement, disclose any financial assets, or have any conversations with Sovereign whatsoever.

15. I have since learned that a note for 1 million dollars and 1.6 million dollars were executed at the closing by AMG and guaranteed by my husband.

16. I received no proceeds of the 2.6 million dollar loan. I received no benefit from the 2.6 million dollar loan. I was not an applicant or a participant in the 2.6 million dollar loan.

17. At no time did I ever authorize any individual prior to the closing to review any documents that I signed at the closing.

18. Ed Quinlan was not my attorney at the closing, nor was he the attorney for my husband.

19. I have now come to learn that the two notes signed at the closing did not result in 2.6 million dollars being lent to AMG or to my husband.

20. At no time, to the best of my knowledge and recollection did Sovereign Bank ever seek information concerning the Stoughton Property from either my husband or myself. I personally never presented any financial data concerning the income of the Stoughton Property to Sovereign Bank or its attorney or its employees. At no time, was I aware that Sovereign Bank or its agents or employees ever appraised the Stoughton Property or evaluated its income potential.

21. At no time, was I ever contacted by Sovereign Bank, its agents, employees, or attorneys for the purposes of informing me that AMG, was not creditworthy.

22. At no time, did Sovereign, its agents, employees or attorneys ever contact me prior to the July 16, 2004 meeting and indicate that Anthony, AMG and my husband, under his guarantee, failed to meet Sovereign's lending standards such that Sovereign needed to evaluate my financial status.

23. At no time, did I ever request Sovereign its agents, employees or attorneys to make any extension of credit to me, my son Anthony, AMG or anyone else.

24. I have been informed that Sovereign Bank has initiated a foreclosure proceeding on the Stoughton Property. As I mentioned above, I and my husband, rely on the income of the Stoughton Property for his retirement.

25. At the present time, I am employed part-time and make a very small salary.

26. A foreclosure on the Stoughton Property would cause irreparable damage to me since it would not only be the loss of the property itself but also result in a complete loss of our retirement income.

27. At no time was I informed by Sovereign Bank, its agents, employees or attorneys that my interest in the Anthony & Company Realty Trust was in jeopardy as a result of the 2.6 million dollar loan made on July 16, 2004.

28. I am not an attorney and I have no legal education whatsoever.

29. I was never given any explanation of any documents that I was to sign at the closing. At no point did anyone from Riemer & Braunstein inform me that their requirement that I sign the documents violated any federal or state law. I do recall the bank attorney mentioning that the guarantee had no effect on me for reasons that I did not understand at the time. Specifically, I asked whether any of these documents had to do with my house in Weston and I was told the documents did not have any to do with my house in Weston.

30. Clearly, the representation by the Riemer & Braunstein attorney was false, as Sovereign Bank has initiated foreclosure on the Stoughton Property. If this foreclosure is allowed to continue I will also lose my home because of the lack of retirement income and as such I will suffer additional, extraordinary and irreparable harm.

SIGNED UNDER THE PAINS AND PENALTIES THIS _28_ DAY OF MARCH, 2005.

Ann Gagliardi

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

TRIAL COURT
SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. _____

MRS. ANN GAGLIARDI,                    )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )
                                       )
SOVEREIGN BANK,                        )
                                       )
                    Defendant.         )

## PRELIMINARY INJUNCTION

This Court hereby orders Sovereign Bank, its agents and lawyers to immediately cease and desist all actions related to a foreclosure that is or may be scheduled for the property located at 331 Page Street, Stoughton, Massachusetts until further notified by this Court.

SO ORDERED.

_____

## COUNSEL OF RECORD

For Plaintiff:

Michael C. McLaughlin, Esquire
Law Offices of Michael C. McLaughlin
One Beacon Street, 33rd Floor
Boston, Massachusetts  02108
(617) 227-2275

For Defendants:

Dennis E. McKenna, Esquire
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts  02110
(617) 880-3454

888951.1