COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                                      TRIAL COURT
                                                      SUPERIOR COURT DEPARTMENT
                                                              CIVIL ACTION NO.

MRS. ANN GAGLIARDI,            )
                               )
            Plaintiff,         )
                               )
v.                             )
                               )
SOVEREIGN BANK,                )
                               )
            Defendant.         )
                               )

## THE AFFIDAVIT OF ANN GAGLIARDI

I, Ann Gagliardi, do state under oath the following:

1. I am the Plaintiff in the above-referenced matter and I reside at 411 South Avenue, Weston, Massachusetts.

2. I am married to Antonio Gagliardi.

3. I am the mother of Anthony Gagliardi.

4. Sometime shortly before July 16, 2004, I was informed that Sovereign Bank, a lender to the company run by my son, known as AMG, required that I attend a meeting at the Law Firm of Riemer & Braunstein on July 16, 2004.

5. Upon information and belief, my husband Antonio had guaranteed the prior debt of AMG.

6. I was not an employee of AMG, nor was I an officer, director or shareholder of AMG.

7. Prior to attending the meeting at Riemer & Braunstein I had not engaged any attorney to represent my interests since I was unaware I needed legal representation.

8. At the meeting, neither I nor my husband were represented by counsel.

1

9. At the meeting, my son Anthony was represented by an attorney by the name of Ed Quinlan.

10. Prior to the meeting, to the best of my recollection, I had never spoken with Ed Quinlan, other than perhaps meeting him at some social event.

11. At the meeting, an attorney from Riemer & Braunstein instructed me to sign a document which I am informed was a guarantee, and to sign a mortgage on property owned by my husband and myself located at 331 Page Street, Stoughton, Massachusetts (the "Stoughton Property").

12. The Stoughton Property is owned by my husband and myself, husband and wife tenancy by the entirety.

13. The income from the Stoughton Property is my husband's retirement income. It is also my retirement income.

14. At no time did I ever apply for any loan from Sovereign Bank. At no time did I ever complete an application for a loan, complete a financial statement, disclose any financial assets, or have any conversations with Sovereign whatsoever.

15. I have since learned that a note for 1 million dollars and 1.6 million dollars were executed at the closing by AMG and guaranteed by my husband.

16. I received no proceeds of the 2.6 million dollar loan. I received no benefit from the 2.6 million dollar loan. I was not an applicant or a participant in the 2.6 million dollar loan.

17. At no time did I ever authorize any individual prior to the closing to review any documents that I signed at the closing.

18. Ed Quinlan was not my attorney at the closing, nor was he the attorney for my husband.

19. I have now come to learn that the two notes signed at the closing did not result in 2.6 million dollars being lent to AMG or to my husband.

20. At no time, to the best of my knowledge and recollection did Sovereign Bank ever seek information concerning the Stoughton Property from either my husband or myself. I personally never presented any financial data concerning the income of the Stoughton Property to Sovereign Bank or its attorney or its employees. At no time, was I aware that Sovereign Bank or its agents or employees ever appraised the Stoughton Property or evaluated its income potential.

21. At no time, was I ever contacted by Sovereign Bank, its agents, employees, or attorneys for the purposes of informing me that AMG, was not creditworthy.

22. At no time, did Sovereign, its agents, employees or attorneys ever contact me prior to the July 16, 2004 meeting and indicate that Anthony, AMG and my husband, under his guarantee, failed to meet Sovereign's lending standards such that Sovereign needed to evaluate my financial status.

23. At no time, did I ever request Sovereign its agents, employees or attorneys to make any extension of credit to me, my son Anthony, AMG or anyone else.

24. I have been informed that Sovereign Bank has initiated a foreclosure proceeding on the Stoughton Property. As I mentioned above, I and my husband, rely on the income of the Stoughton Property for his retirement.

25. At the present time, I am employed part-time and make a very small salary.

26. A foreclosure on the Stoughton Property would cause irreparable damage to me since it would not only be the loss of the property itself but also result in a complete loss of our retirement income.

27. At no time was I informed by Sovereign Bank, its agents, employees or attorneys that my interest in the Anthony & Company Realty Trust was in jeopardy as a result of the 2.6 million dollar loan made on July 16, 2004.

28. I am not an attorney and I have no legal education whatsoever.

29. I was never given any explanation of any documents that I was to sign at the closing. At no point did anyone from Riemer & Braunstein inform me that their requirement that I sign the documents violated any federal or state law. I do recall the bank attorney mentioning that the guarantee had no effect on me for reasons that I did not understand at the time. Specifically, I asked whether any of these documents had to do with my house in Weston and I was told the documents did not have any to do with my house in Weston.

30. Clearly, the representation by the Riemer & Braunstein attorney was false, as Sovereign Bank has initiated foreclosure on the Stoughton Property. If this foreclosure is allowed to continue I will also lose my home because of the lack of retirement income and as such I will suffer additional, extraordinary and irreparable harm.

SIGNED UNDER THE PAINS AND PENALTIES THIS _28_ DAY OF MARCH, 2005.

_____
Ann Gagliardi