UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10859-NG

| | |
|---|---|
| MRS. ANN GAGLIARDI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SOVEREIGN BANK, | ) |
| | ) |
| Defendant. | ) |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF MRS. ANN GAGLIARDI'S MOTION FOR PRELIMINARY INJUNCTION BASED UPON NEW INFORMATION**

**Introduction**

Now comes the Plaintiff with this Supplemental Memorandum in Support of the Motion For Preliminary Injunction based on new information provided to the Court by the Defendant Sovereign Bank as part of its opposition to the Plaintiff's Motion.

**The Bokelkamp Affidavit**

As the Court is aware, the Defendant filed an opposition to the Plaintiff's Motion. Attached to the opposition, is the Affidavit of Bret E. Bokelkamp, a loan officer of the Defendant. The Bokelkamp Affidavit demonstrates that the Plaintiff has a very high likelihood of success in connection with the burdens required for the issuance Preliminary Injunction. The Bokelkamp Affidavit, in fact, is an admission which taken with various other documents, demonstrates that Sovereign undertook a deliberate effort

1

to fraudulently induce Plaintiff into signing a Guaranty, a Mortgage and an Assignment of Leases and Rents.

### **Sovereing willfully failed to disclose it had already determined that AMG could not succeed**

The complaint includes the allegation that the Plaintiff was mislead about the condition of AMG and further that Sovereign affirmatively took steps to materially misrepresent financial condition of AMG in order to induce the Plaintiff to sing documents. The Bokelkamp Affidavit verifies the Plaintiff's allegations.

As the Court is aware, Sovereign, as a result of a Forbearance Agreement with AMG required the Plaintiff to sign various documents on July 16, 2004. These documents included a Guaranty and a Mortgage on property owned by the Plaintiff and her husband (tenancy by the entirety) and an Assignment of Leases and Rents. Prior to July 16, 2004, Sovereign had already determined that AMG, unknown to Ann Gagliardi, was not creditworthy, was illiquid, was in serious default and was overadvanced $1,966,565.00.

It is not the Plaintiff who is asserting that the AMG, prior to July 16, 2004, was illiquid, undercapitalized and not creditworthy. Rather, it is Sovereign who is asserting these facts. In fact, at paragraph 25 Bokelkamp states that AMG had been "overadvanced" $1,966,565.00. See Affidavit of Bret E. Bokelkamp paragraph 25.  No where in documents signed by the Plaintiff is there any disclosure of an "overadvance" of any amount. The Plaintiff respectfully suggests that the overadvance of nearly $2,000,000.00 is a materially important fact that must disclose to anyone who is being asked to guarantee an extension of credit. In addition, Bret E. Bokelkamp states that the

2

overadvance was growing. See Affidavit of Bokelkamp paragraph 25. The fact the overadvance was worsening is also a material fact that would have to be disclosed.

Bokelkamp goes on to state in paragraph 27 that, at the time he undertook discussions with AMG in June of 2004, one month before the Plaintiff signed a Guaranty, a Mortgage and an Assignment of Leases and Rents, there is no one document presented to the Plaintiff in which Sovereign discloses to her that Sovereign had determined that AMG was "illiquid, undercapitalize as a result of its recent operating losses, was in serious default of its payment obligations to Sovereign and was not a creditworthy entity." See Affidavit of Bokelkamp paragraph 27.

There is not one document signed by Plaintiff in which Sovereign discloses to her that Sovereign had determined that AMG was illiquid and undercapitalized. There is not one document presented to Plaintiff for her signature in which Sovereign discloses to her that AMG was suffering continuing operating losses and was in serious default and was <u>overadvanced by</u> $1,966,565.00. Finally, and most importantly, there is not one document presented to Plaintiff for her signature in which Sovereign discloses to her that <u>Sovereign had already determined that AMG, the company whose performance Sovereign was requiring Plaintiff to guarantee, was not even a creditworthy entity</u>.

### **The Bokelkamp Affidavit demonstrates that Plaintiff has strong likelihood of success on the merits**

As outlined in Plaintiff's Memorandum in Support the Preliminary Injunction, the Plaintiff must demonstrate a reasonable likelihood of success on the merits. Plaintiff respectfully suggests that the Bokelkamp Affidavit renders the likelihood a certainty. The documents signed on July 16, 2004, were drafted by Sovereign or its representatives,

3

Riemer and Braunstein LLP. Those documents are silent on the lack of creditworthiness, illiquidity, serious and worsening default, and the overadvancement of $1,966,565.00 referred to in the Bokelkamp Affidavit. Since the Plaintiff has stated in her affidavit that she never was told about these material issues, the Court may properly conclude that Sovereign deliberately withheld this information from the Plaintiff. Deceptive acts or practices can consist of failures to disclose important information. York v. Sullivan, 369 Mass. 157, 338 N.E.2d 341 (1975). Deception need not be direct to come within the reach of the law. It may arise from a negligent misrepresentation. Danca v. Taunton Savings Bank. 429 N.E.2d 1129, 1133.  Where a party such as Sovereign knows facts which, if disclosed, might cause the other party to change its position, failure to disclose those facts, will support an award of punitive damages under Chapter 93A. Grossman v. Waltham Cam. Co., 14 Mass.App.Ct. 932, 436, N.E.2d, 1243, 1245-46.

Either negligent or willful conduct deemed unfair or deceptive is actionable under M.G.L. c. 93A, Sections 2, 11, Linthicum v. Archambault, 379 Mass. 381, 388, 398 N.E.2d 482 (1979); MacGilvary v. W. Dana Bartlett Ins. Co., 7 Mass.App.Ct. 52, 436 N.E.2d 962, 963-69 (1982). Certainly, the fact that Sovereign failed to reference its determination that AMG was not creditworthy, demonstrates willful conduct.

An Unfair Trade Practice is one which is immoral, unethical, oppressive or unscrupulous. Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 396 N.E.2d 149, appeal after remand, 429 N.E.2d 50 (1979). Fundamentally, Sovereign had an unsecured loan in which they had no chance of recovery. What they accomplished was to get "security" in the form of Plaintiff's Guaranty, Mortgage and Assignment of Leases and

Rents in exchange for nothing. The withholding of the dire condition of AMG, as determined by Sovereign, was immoral, unethical, oppressive, and unscrupulous.

There is a general requirement that parties to contracts and commercial transactions must act in good faith towards one another. The parties to a contract are bound by this standard. Fortunate v. National Cash Register Co., 373 Mass. 96 364 N.E.2d 1251 (1977). General Laws, Chapter 106, Section 1-201 (19) defines "Good Faith" as honesty in fact in the conduct or transaction concerned. The provisions of Chapter 93A apply to banks. Raymer v. Bay State National Bank, 384 Mass. 320, 424 N.E.2d 515, 521 (1981). If a lender does not act consistently and honestly, then this is an Unfair Trade Practice. Shallor v. Marine National Bank, 131 Wis. 2d 389 (1986); Besta v. Beneficial Loan Company, 855 F.2d 531 (8th Cir. 1988).

It is an Unfair Trade Practice if a bank takes advantage of a borrower [or guarantor] so that the borrower [or guarantor] is unable to receive the substantial benefit from the transaction that he bargained for. Literal truths and half-truths that avoid material facts are deceptive and can be an Unfair Trade Practice. See V.S.H. Reality, Inc. v. Texaco, Inc., 757 F.2d 411 (1st Cir. 1985 applying Massachusetts Law). The partial disclosure of a material fact thereby saying less than the whole truth is a method of deception and can be an Unfair Trade Practice. P. Lorillard Co. v. F.T.C., 186 F.2d 42 (4th Cir. 1950). A mire reference to AMG being in default such as that contained in the Forbearance Agreement is a quit essential of half truth. Default could be failure to monthly payment. The whole truth has been found in Bolkekamp Affidavit for the first time. A systematic breach of contract and not being honest with the other party which

5

causes him substantial damages is an Unfair Trade Practice. <u>Orkin Exterminating Co. v. F.T.C.</u>, 849 F.2d 1354 (11th Cir., 1988). There can be no doubt that the bank was not honest with Plaintiff.

It is an Unfair Trade Practice if a bank leads the borrowers to believe that they are attempting to work out a loan and consider ways of permitting funding when the bank has already decided to foreclose. <u>In Re Martins Specialty Vehicles, et al.</u>, Bankruptcy Lexis 869 Slip opinion of Judge Quinan, Bankruptcy Court in Worchester. Bokelkamp's Affidavit, demonstrates that Sovereign had already decided that AMG could not survive. However, Sovereign also knew that it had to "collateralize" the loan which, prior to July 16, 2004, was a complete loss. Sovereign knew that one it had the Plaintiff's Guaranty, Mortgage and Assignment of Leases and Rents. It would certainly foreclose on those documents.

Implicit in every contract is the principle that there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing. <u>Drucker v. Roland. Wm. Jutras Assoc.</u>, 370 Mass. 383, 385, 348 N.E.2d (1976); <u>A. John Cohen Ins. Agency v. Middlesex Ins. Co.</u>, 392 N.E.2d 1384 (1981). "[a]ny person or other legal entity subject to this act fails to disclose a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction." <u>V.S.H. Realty, Inc. v. Texaco, Inc.</u>, 757 F.2d at 417.

In <u>Standard Register Co. v. Bolton-Emerson, Inc.</u>, 38 Mass.App.Ct. 545, 649 N.E.2d 791 (1995), suit was brought for misrepresentation in connection with the

6

plaintiff's order for manufacture and delivery of a label machine known as a hot melt coater. In order to induce Standard to enter into the contract, Bolton officials gave assurances that the coater would be completed within the required time period, <u>even though they knew timely performance would not be possible because of cash flow problems.</u> The coater was never delivered. Standard sued under Chapter 93A for a return of its deposit, the cost of a replacement coater, moving expenses and lost profits. The Court held that both the corporate defendant and its individual officers were guilty of perpetrating the deception and had violated Chapter 93A. The damages were doubled for knowing and willful violations. In the instant case, the Bokelkamp Affidavit most certainly provides the Court with solid basis for concluding that Sovereign conspired and concocted a plan for the purpose of causing Ann Gagliardi to "sign away" her life's savings. They knew that they would have to withhold the truth from her in order for her to comply with their demands.

## **Conclusion**

The Bokelkamp Affidavit verifies the allegations contained in the complaint. Sovereign's actions were fundamentally unfair, immoral, unscrupulous and illegal. They should not be allowed to reap the benefits of their deception by foreclosing on the properties, particularly, given the Plaintiff's likelihood of success. It must be remember that if the Court grants the Preliminary Injunction, Sovereign will simply be in the same position that it was in prior to its July 16, 2004, deception to the Plaintiff.

                                     Respectfully Submitted,

                                     Mrs. Ann Gagliardi,
                                     By her counsel,

                                     **LAW OFFICES OF MICHAEL C. MCLAUGHLIN**

Dated: August 26, 2005    By:    /s/ Michael C. McLaughlin, Esq.
                                                         (BBO# 367350)
                                                         One Beacon Street, 33rd Floor
                                                         Boston, MA 02108
                                                         (617) 227-2275


## **CERTIFICATE OF SERVICE**

    I certify that a copy of the Supplemental Memorandum in Support of Plaintiff Mrs. Ann Gagliardi's Motion for Preliminary Injunction Based upon New Information was served on the following person on this date and in the manner specified herein: Electronically Served Through ECF: Kathleen C. Stone, Esquire, counsel for the defendant.


Dated: August 26, 2005                                        /s/ Michael C. McLaughlin, Esq.