UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10859-NG

_____
MRS. ANN GAGLIARDI,                      )
                                         )
                     Plaintiff,          )
                                         )
v.                                       )
                                         )
SOVEREIGN BANK,                          )
                                         )
                     Defendant.          )
_____)

**FIRST PLAINTIFF'S AMENDED**
**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Introduction**

This case is about Federal banking law violations, civil rights violations, misrepresentation, deception, and fraud by Sovereign Bank, a large federal savings bank, against Mrs. Ann Gagliardi, Plaintiff, whereby Sovereign illegally obtained a guarantee and a mortgage in violation of federal law. Said guarantee and mortgage and supporting documents are illegal, null and void. Plaintiff Mrs. Ann Gagliardi seeks declaratory judgment from this Court rendering all documents signed by her null and void and further she seeks damages as she is statutorily entitled to.

**PARTIES**

1.  Plaintiff Mrs. Ann Gagliardi ("Mrs. Gagliardi") is an individual residing at 411 South Avenue, Weston, Middlesex County, Massachusetts.

2.  Defendant Sovereign Bank ("Sovereign") is, upon information and belief, a federal savings bank, organized and existing under the laws of the United States of America, with a usual place of business at 75 State Street, Boston, Suffolk County, Massachusetts.

**FACTS**

3.  AMG Construction Company ("AMG") is a corporation organized and existing under the laws of Massachusetts, with the usual place of business 615 Concord Street, Framingham, Middlesex County, Massachusetts. On or about July 30, 2001, AMG, upon information and belief entered into a "revolving line of credit" between itself and Sovereign.

4.  Anthony Gagliardi ("Anthony") is the president of AMG and the son of Mrs. Gagliardi and Antonio Gagliardi.

5.  The revolving line of credit was allegedly memorialized with a line of credit note in the amount of 2 million dollars ("the 2 Million Dollar Note").

6.  Also on or about July 30, 2001, AMG entered into an "equipment line of credit note" in the amount of $200,000.00 ("the $200,000.00 Equipment Line of Credit Note").

7.  Upon information and belief, AMG also entered into a loan and security agreement dated July 30, 2001 ("the Loan and Security Agreement").

8.  Antonio Gagliardi ("Antonio") is the husband of Mrs. Gagliardi and is an individual residing at 411 South Avenue, Weston, Middlesex County, Massachusetts.

Upon information and belief, Sovereign claims to have an "unlimited guarantee" of Antonio, signed on July 30, 2001, whereby Antonio guaranteed the debt of AMG.

9.  Antonio, an Italian immigrant with a fifth grade Italian education, is a former stonemason now retired.

10. Mrs. Gagliardi at all times relevant to these matters was neither a shareholder, officer nor director of AMG.

11. On or about July 30, 2001, despite the fact that Mrs. Gagliardi had no connection to AMG or to any application for any credit from Sovereign, Sovereign nevertheless required Mrs. Gagliardi and Antonio to sign a non-encumbrance agreement by which Mrs. Gagliardi and Antonio promised not to encumber property located at located at 331 Page Street, Stoughton, Massachusetts, which was owned by Antonio and Mrs. Gagliardi as husband and wife, tenancy by the entirety ("the Stoughton Property"). The Stoughton Property is a commercial property where the income of the property represents the vast majority of Antonio and Mrs. Gagliardi's retirement funds.

12. Upon information and belief, AMG was unable to pay back the 2 Million Dollar Note and was unable to pay back the $200,000.00 Equipment Line of Credit Note.

13. Upon information and belief, Sovereign on several occasions increased the 2 Million Dollar Note and the $200,000.00 Equipment Line of Credit Note until the total combined indebtedness exceeded $2,600,000.000.

14. According to the Loan and Security Agreement between itself and AMG, Sovereign failed to obtain any real estate security.  Rather, Sovereign limited its security to receivables of AMG.

15. While Sovereign required the non-encumbrance agreement, from Antonio and Mrs. Gagliardi, it did not obtain a mortgage on the Stoughton Property in 2001.

16. Upon information and belief, Sovereign realized that AMG could not repay the obligations that existed under the 2 Million Dollar Note and the $200,000.00 Equipment Line of Credit Note, because, it had no claims against any real estate as security and AMG had virtually no receivables that could in any significant way offset Sovereign's claim totaling 2.6 million dollars.

17. Upon information and belief, Sovereign under federal banking laws was required to make certain accounting adjustments in connection with the AMG debt because it had become in large part uncollectable.  Upon information and belief, such accounting adjustments included the recording of a loss in the amount that could include the entire $2.6 million debt of AMG.  This was required because Sovereign had virtually nothing to foreclose on once it realized that AMG could not repay the 2.6 million dollars.

18. Upon information and belief, Sovereign in 2004 began a course of action intended to defraud, mislead, misrepresent the status of the 2.6 million dollar debt not only to Mrs. Gagliardi but to the federal and state banking authorities in order to cause Mrs. Gagliardi to sign an illegal guarantee and a mortgage on the Stoughton Property.

19. The course of action included the drafting of illegal and misrepresentative new loan documents which were intended to fraudulently mislead Mrs. Gagliardi and others so that Sovereign could convert its now worthless loan into an illegally secured real estate loan.

20. Upon information and belief, sometime in 2004 Sovereign had been informed by AMG that AMG could not repay the loan.  In addition, during the same time period,

AMG lost its ability to secure any bonding for public construction projects which were the primary source of income for AMG.  Sovereign was informed by AMG that because of the loss of its bonding capacity AMG would not be able to continue on public construction projects and therefore AMG had lost the vast majority of its income.

21. Upon information and belief, Sovereign was so informed by AMG at or about the time that Sovereign was or had been required under federal and state banking laws and accounting standards to take the loss on its unsecured loans to AMG.

22. Upon information and belief, Sovereign was aware that the so called unlimited guarantee of Antonio was virtually worthless because the only assets of Antonio were held by Antonio and Mrs. Gagliardi as husband and wife, tenancy by the entirety.  This fact was always known by Sovereign as demonstrated by the fact that Sovereign drafted and recorded at the Norfolk County Registry of Deeds the non-encumbrance agreement for the Stoughton Property thus putting the world on notice of the tenancy by the entirety form of ownership of the Gagliardis.

23. Sovereign knew it could not enforce the so called unlimited guarantee of Antonio because Sovereign could not effectuate a sale of the Stoughton Property even if Antonio's unlimited guarantee was valid because under Massachusetts law Mrs. Gagliardi retained an undivided interest in the property.

24. Upon information and belief, Sovereign was also aware that it could not collect on the so called unlimited guarantee of Antonio as it related to Antonio's only other property, his home in Weston, Massachusetts, since the home was also owned by Antonio and Mrs. Gagliardi, husband and wife, tenancy by the entirety.

25. Upon information and belief on or about the early spring of 2004, Anthony Gagliardi, president of AMG entered into numerous conversations with Sovereign. Upon information and belief, Anthony repeatedly informed Sovereign that given the financial condition of AMG it would be virtually impossible to obtain bonding commitments in order to resume construction work. Upon information and belief, Anthony Gagliardi also informed Sovereign that he saw no possibility of the company earning any money for the fiscal year 2004.

26. Sovereign aware that it was without any viable option offered to extend the time for the repayment for the 2.6 million dollars. Sovereign had no option but to do so since there was no collateral to foreclose on it.

27. On or about June of 2004, Sovereign requested that AMG enter into a Forbearance Agreement. In connection with negotiation of the Forbearance Agreement, Sovereign had numerous discussions with AMG and its counsel.

28. Unknown to AMG, or the Plaintiff, Sovereign had determined that AMG was illiquid, undercapitalized, was in serious default, and was not creditworthy. See Affidavit Bret E. Bokelkamp, paragraph 27.

29. In spite of already concluding that AMG could not repay any of the debt it had with Sovereign, Sovereign undertook a course of action intending to lead the Plaintiff to believe that the requiring of her Guaranty was necessary in order for Sovereign to move forward with the Forbearance Agreement.

30. At no time did Sovereign informed the Plaintiff that it had already determined that AMG was illiquid, undercapitalized, was in serious default, and was not

creditworthy. Sovereign knew if this information was disclosed to the Plaintiff, the Plaintiff would not sign the Guaranty or the Mortgage.

31. On or about July 16, 2004, Sovereign required AMG and Antonio and Mrs. Gagliardi to attend a closing at Reimer & Braunstein to sign specific documents which prior to the closing neither Antonio nor Mrs. Gagliardi had ever reviewed, read or analyzed.

32. Sovereign was fully aware that Antonio had extremely limited understanding of English and virtually no understanding of legal documents. Further Sovereign knew that Antonio and Mrs. Gagliardi were not represented by counsel.

33. Sovereign produced misleading, illegal and void documents with the express purpose of causing Antonio and his wife Mrs. Gagliardi to sign documents that violated federal and state law.

34. Sovereign never undertook any creditworthiness analysis of Antonio Gagliardi to determine whether it could be justify in requiring the Plaintiff to personally sign the Guaranty of the performance of AMG in repay $2.6 million dollar in December 31, 2004.

35. Sovereign never undertook evaluate whether the collateral evidence by the Mortgage granted by the Plaintiff was sufficient to justify the 1.6 Million Note and the 1 Million Note represented by the Forbearance Agreement signed on July 16, 2004.

36. Included in the documents, signed on or about July 16, 2004, were two notes, one in the amount $1,600,000.00 ("the 1.6 Million Dollar Note") and the other in the amount of $1,005,264.46 ("the 1 Million Dollar Note") which were allegedly signed by AMG thus eliminating by payment in full the Two Million Dollar Line of Credit Note, as amended and the $200,000.00 Equipment Line of Credit Note, as amended.

37. The 1.6 Million Note and the 1 Million Dollar Note contain no interest rate, no maturity date, no payment schedule, no repayment amounts on a monthly basis and no reference to the fact that both notes were already in default at the time they were signed on July 16, 2004, nor did they disclose that the alleged 2.6 Million Dollar AMG obligation to Sovereign was in default.

38. Upon information and belief, under federally approved and required banking standards, the 1.6 Million Note and the 1 Million Dollar Note eliminated the prior $2.6 million obligation. To the extent that Antonio's alleged unlimited guarantee was applicable to the 2 Million Line of Credit as amended or the $200,000.00 Line of Credit as amended that applicability was completely and entirely relieved by the signing of the 1.6 Million Dollar Note and the 1 Million Dollar Note.

39. The 1.6 Million Dollar Note and the 1 Million Dollar Note were drafted for the illegal purpose of depicting AMG, as not being in default. Upon information and belief, since the 1.6 Million Dollar Note and the 1 Million Dollar Note made no reference as to the fact that the prior debt had been in default for several years, Sovereign concocted a theory whereby disclosure of the status of the long defaulted AMG loan to banking authorities, could be avoided. In addition, upon information and belief, Sovereign in drafting the 1.6 Million Dollar Note and the 1 Million Dollar Note believed that the appearance of no default would cause a bonding company to consider bonding AMG since a review of the 1.6 Million Dollar Note and the 1 Million Dollar Note suggested that AMG had just been paid a total of 2.6 million dollars by the bank and no default had occurred. In fact, Sovereign did not give, disburse or otherwise transfer 1.6 million or 1 million to AMG on July 16, 2004 or at any time subsequent.

40. The 1.6 Million Dollar Note and the 1 Million Dollar Note were deliberately and misleadingly drafted by Sovereign as evidence of AMG's ability to meets its obligations.

41. Sovereign in support of the 1.6 and 1 Million Dollar Notes drafted and caused to be signed a series of documents violative of federal and state law.

42. Included in these illegal documents is an illegal so called "limited recourse guarantee", dated July 16, 2004, (Mrs. Gagliardi's Guarantee) which Sovereign required Mrs. Gagliardi to sign notwithstanding the fact that Sovereign knew or should have known that such a guarantee violated the Equal Credit Opportunity Act (15 U.S.C. §. 1691) ("ECOA").  At no time did Mrs. Gagliardi seek, request or apply for any credit or any extension of Credit from Sovereign.

43. At no time did Mrs. Gagliardi seek, request or obtain any application for credit from Sovereign.

44. Sovereign specifically required that Mrs. Gagliardi execute and deliver the illegal guarantee.

45. Mrs. Gagliardi's guarantee secured the obligation of her husband Antonio.

46. A component of Mrs. Gagliardi's Guarantee was to ensure that Mrs. Gagliardi could not receive any funds that were owed and remained owed to Mrs. Gagliardi by AMG.  As a result Sovereign prevented Mrs. Gagliardi from being paid monies that were owed to her.

47. In addition, Mrs. Gagliardi's Guarantee also required that Mrs. Gagliardi, who was unrelated to AMG by way of employment or ownership, was required, under the terms of the illegal guarantee, to become the "trustee" of the Sovereign's interest in

connection with any amounts of money that came to Mrs. Gagliardi as a result of AMG's obligations to Mrs. Gagliardi. This requirement that Mrs. Gagliardi become a trustee for Sovereign was unconscionable and was without consideration.

48. Sovereign, aware of Antonio's lack of understanding and capacity in connection with documents signed by Antonio in the past as well as his lack of capacity in signing the documents at the closing, included a provision in Mrs. Gagliardi's Guarantee in which she guaranteed the 1.6 Million Dollar Note and 1 Million Dollar Note even if her co-guarantor i.e. her husband, Antonio, was incapacitated.

49. Sovereign undertook no credit worthiness analysis of Mrs. Gagliardi as required by ECOA.

50. An illegal mortgage signed by Mrs. Gagliardi and Antonio for the Stoughton Property where said mortgage was given to illegally secure Mrs. Gagliardi's illegal Guarantee of the obligations of her husband. As such not only is Mrs. Gagliardi's Guarantee illegal and unenforceable so is the mortgage on the Stoughton Property.

51. Sovereign, aware that the original 2.6 million dollar debt had been paid off by the 1.6 Million Dollar Note and the 1 Million Dollar Note caused Antonio to sign a document entitled Ratification of Guarantee dated July 16, 2004 whereby Sovereign attempted to cause Antonio to issue a new guarantee of the illegal 1.6 Million and 1 Million Dollar Notes. Said Ratification of Guarantee is in itself unenforceable and against public policy because it purports to bind Antonio into guaranteeing illegal, unenforceable and void documents which violate federal and state law as well as public policy.

52. Sovereign, aware that it had no collateral in the absence of causing these illegal documents to be signed also caused Antonio and Mrs. Gagliardi to further secure her illegal guarantee by obtaining an Assignment of Leases and Rents for the Stoughton Property whereby Sovereign sought to access the retirement funds produced by the Stoughton Property to pay off some portion of the illegal 1.6 Million Dollar Note and the 1 Million Dollar Note.  The Assignment of Leases and Rents is illegal, unenforceable and violative of ECOA and state law as well as public policy.

53. Sovereign, in furtherance of its illegal undertaking drafted a document entitled Forbearance Agreement dated July 16, 2004 ("the Forbearance Agreement") which on its face was illegal, void and against public policy and was drafted for the purposes of deceiving not only Mrs. Gagliardi and Antonio but also federal and state banking authorities.

54.  Under the provisions of federal law, Sovereign is required to use "safe and sound banking practices" in making loans, renewals of loans, refinancing or restructuring of loans.  The Code of Federal Regulations, 12 CFR 365, Appendix A, requires that such safety and soundness standards must be applied including matters relating to the extension of credit.

55. The Forbearance Agreement is deliberately, deceptively and unfairly drafted in knowing violation of safety and soundness practices in order to give the appearance of normal banking procedure to all but the most sophisticated of readers.

56. Safety and soundness practices would require a lender, prior to the extension of credit, verifying the borrower's ability to repay, evaluating the borrower's business plan and evaluating and approving the borrower's then current credit rating.  Such safety and

soundness practices, are self evident but nevertheless are required under the federal regulations.

57. Notwithstanding the self evident nature of safety and soundness practices Sovereign supposedly approved the "extension of credit" whereby its own Forbearance Agreement states unequivocally that it has not reviewed a business plan, and therefore in effect acknowledged that it has no basis for reasonably believing that AMG could repay the loan. The Forebearance Agreement states that Sovereign has not determined that AMG's credit was sufficient to be bondable, and therefore had no basis for believing that AMG could derive any income from public construction projects, which was AMG's only significant source of revenue. The Forebearance Agreement contains other provisions which demonstrate there could be no good faith evaluation of the credit worthiness of AMG.

58. The Forbearance Agreement dated August 16, 2004 by its own terms was in multiple material default prior to it even being signed.

59. The Forbearance Agreement contains a provision which states that Sovereign's extension of credit was contingent upon the subsequent submission by AMG of an approved business plan which would demonstrate that AMG has a capacity to repay the loan. Upon information and belief, the business plan which was to be submitted weeks after the signing of the Forbearance Agreement, in fact demonstrated that AMG could not repay the loan. Upon information and belief, the business planner, the financial consultant accepted and approved by Sovereign for the purposes of submitting AMG's business plan, informed Sovereign that AMG could not repay the loan. As a result the Forbearance Agreement was in default prior to it being signed. This information was

already known to Sovereign prior to signing the Forbearance Agreement, and yet not disclosed to Mrs. Gagliardi by Sovereign Bank.

60. The Forbearance Agreement also included provisions whereby Sovereign agreed to lend money to "investors" who would be willing to invest $400,000.00 into AMG and that Sovereign would finance such investment even though such financing would most certainly violate safety and soundness provisions of the Federal Code of Regulations since Sovereign knew that AMG was in default on 2.6 million dollars of debt. The offer to finance "investors" purchases of stock in AMG would by definition require AMG to use the 1.6 Million Dollar Note and the 1 Million Dollar Note as evidence that no default existed even though Sovereign was aware that 2.6 million default was "eliminated" by the signed of the bogus and illegal 1.6 Million Dollar Note and the 1 Million Dollar Note. Since Sovereign knew under safety and soundness standards that Sovereign could never make such loans to investors, then they also knew that the Forbearance Agreement was in default before it was signed.

61. The Forbearance Agreement had another illegal provision whereby it linked the Antonio's Ratification of Guarantee and Mrs. Gagliardi's Guarantee to a loan of $150,000.00 to Antonio for the purpose of an investment in AMG as "equity" provided Antonio applied for the Sovereign loan of $150,000.00 by July 15, 2004. Since Antonio, to the extent he could even read the Forbearance Agreement, which he could not, did not see the Forbearance Agreement until July 16, 2004, he could never have complied with the requirement that he apply for the loan the day before he first saw the Forbearance Agreement. This linking of the Guarantee and the "investment loan" violates provisions of the Bank Holding Company Act, 12 U.S.C. 1972.

62. Upon information and belief, Sovereign required Anthony Gagliardi as trustee of the Anthony & Company Realty Trust to issue a mortgage on property located at 615 Concord Street, Framingham, Massachusetts ("the Framingham Property"). The sole beneficiary of the Anthony & Company Realty Trust is Mrs. Ann Gagliardi.

63. Sovereign deliberately included the bogus provisions subsequent to closing, i.e. an acceptable business plan, the of $400,000.00 to investors and the requirement that AMG receive a $5,000,000 (5 Million) bonding capacity could not be met and were not met as required by the Forbearance Agreement. Sovereign was unquestionably aware that AMG's "default" on the 2.6 Million obligation would absolutely prevent any surety from issuing a $5,000,000 bond

64. As a result of all of the above, the 1.6 Million Dollar Note, the 1 Million Dollar Note, the Forbearance Agreement and all supporting documents, including the loan security agreement are void, illegal and against public policy, thus rendering Mrs. Gagliardi's unlimited guarantee of such documents void.

65. Upon information and belief, notwithstanding the language in Mrs. Gagliardi's illegal Guarantee which purports to limit Sovereign's recovery against Mrs. Gagliardi to her share of the proceeds in the Stoughton Property, an undivided interest, and therefore impossible.

## COUNT I

### Equal Credit Opportunity Act (15 U.S.C. §1691)

66. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 58 above and incorporates them by reference as if fully set forth herein.

67. Sovereign, in requiring Mrs. Gagliardi to sign the guarantee, violated her civil rights as protected by the Equal Credit Opportunity Act (15 U.S.C. §1691 et sec.).

68. As a result of Sovereign's actions, Mrs. Gagliardi has been damaged.

## COUNT II
### Fraud In The Inducement Claim Against Sovereign

69. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 61 above and incorporates them by reference as if fully set forth herein.

70. The aforesaid misrepresentations and concealment were made by Sovereign knowingly and with the intent to induce Mrs. Gagliardi to sign and execute the guarantee, mortgage and Assignment of Leases and Rents even though as a result of the aforesaid misrepresentations she could not have understand state and federal law violations contained in such documents.

71. As a result of Sovereign's fraud, Mrs. Gagliardi is entitled to the equitable remedy of rescission of her unlimited guarantee, the mortgage on the Stoughton Property, and the Assignment of Leases and Rents.

## COUNT III
### Misrepresentation Claim Against Sovereign

72. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 64 above and incorporates them by reference as if fully set forth herein.

73. The aforesaid misrepresentations and concealments were made by Sovereign negligently in breach of the duty of good faith and fair dealing owed to Mrs. Gagliardi.

74. As a result of Sovereign's misrepresentations, Mrs. Gagliardi has suffered substantial damages and the contract is voidable or, alternatively, Mrs. Gagliardi is entitled to the equitable remedy of rescission.

15

## COUNT IV
### Duress Against Sovereign

75. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 67 above and incorporates them by reference as if fully set forth herein.

76. Sovereign wrongfully demanded and required Mrs. Gagliardi to sign documents, including but not limited to personal guarantees, and this wrongful influence actually overcame the freedom of mind and the will of Mrs. Gagliardi.

77. Mrs. Gagliardi involuntarily accepted the terms of Sovereign and circumstances, which were the result of the coercive acts of Sovereign, permitted no other alternative.

78. As a result of Sovereign's actions, Mrs. Gagliardi has suffered substantial damages and the contract is voidable or, alternatively, Mrs. Gagliardi is entitled to the equitable remedy of rescission.

## COUNT V
### Fraud Claim Against Sovereign

79. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 71 above and incorporates them by reference as if fully set forth herein.

80. Sovereign made false and fraudulent representations to Mrs. Gagliardi of material facts, with knowledge of their falsity, including the nature and contents of a writing, by which Mrs. Gagliardi was induced to sign it.

81. Mrs. Gagliardi relied upon such false representations knowingly made by Sovereign and was damaged thereby.

82. Mrs. Gagliardi has suffered substantial damages and the contract is voidable or, alternatively, Mrs. Gagliardi is entitled to the equitable remedy of rescission.

## COUNT VI

M.G.L. Ch. 93A Unfair and Deceptive Practices Claim Against Sovereign

83. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 75 above and incorporates them by reference as if fully set forth herein.

84. Sovereign is engaged in trade or commerce within the meaning of G.L.c. 93A, sec. 1.

85. The acts and practices alleged above constitute unfair or deceptive acts and practices declared unlawful by G.L. c. 93A, sec. 2 and 11, and regulations promulgated by the Attorney General thereunder.

86. Sovereign's use or employment of said acts or practices were willful or knowing violations of G.L.c. 93A.

87. Mrs. Gagliardi has suffered an adverse effect as a result of the use of unfair and deceptive acts or practices by Sovereign as hereinbefore alleged.

## COUNT VII

Violation of Bank Holding Company Act 12 U.S.C. § 1972(1)(B-D)

88. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 80 above and incorporates them by reference as if fully set forth herein.

89. Sovereign knew or should have known that the requiring of additional guarantees of Mrs. Gagliardi and the linking of the requirement to borrow money for Antonio, is prohibited under the Bank Holding Company Act.

90. Mrs. Gagliardi's guarantee and all other documents, including the Stoughton mortgage and assignment of leases and rents are voidable and Mrs. Gagliardi is entitled to rescission of all documents signed by her.

91. Mrs. Gagliardi has been damaged by the actions of Sovereign.

## COUNT VIII
### Intentional Infliction of Emotional Distress

92. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 84 above and incorporates them by reference as if fully set forth herein.

93. Sovereign's misconduct, acts, omissions, representations and misrepresentations alleged herein, constitutes intentional, extreme and outrageous conduct in reckless disregard of the probability of causing severe and extreme emotional distress.

94. Mrs. Gagliardi has suffered substantial damages.

## COUNT IX
### Conspiracy

95. Mrs. Gagliardi repeats and realleges the allegations set forth in paragraphs 1 through 88 above and incorporates them by reference as if fully set forth herein.

96. Sovereign and its employees, officers, agents and representatives had determined prior to the signing of the documents on July 16, 2004, that AMG was illiquid, undercapitalized and not creditworthy. In addition, Sovereign also had determined that AMG had been overadvanced $ 1,966,565.00.

97. Sovereign and its employees, officers, agents, and representatives conspired to withhold material information from Mrs. Gagliardi and Antonio Gagliardi concerning Sovereign's predetermined decision concerning creditworthiness and overadvances and formulated an unlawful and conspiratorial plan whereby Sovereign entered into a scheme for the purposes of obtain leases and rents on property owned by Mrs. Gagliardi and her husband, and a Guaranty from Mrs. Gagliardi, for the express purpose obtaining collateral by fraud and misrepresentation.

98. Sovereign and its employees, officers, agents, and representatives cooperated in instigating a plan by which Sovereign could substantially improve its position by deliberate and material failure to disclose its determination concerning creditworthiness of AMG.

99. Sovereign and other unnamed conspirators in the Managed Asset Division, conspired to illegally obtain from Mrs. Gagliardi and Antonio Gagliardi guarantees, a mortgage, and an assignment of leases and rents, in order to illegally convert the unsecured defaulted loan into a secured loan to the detriment of Mrs. Gagliardi and Antonio Gagliardi without dispersing any funds in exchange for such guarantees, mortgage, and assignment of leases and rent.

100.    Sovereign and other unnamed conspirators in the Managed Asset Division, entered into course of action whereby the July 16, 2004 documents were created for the purpose of misrepresentation, misdirection, and fraud, since Sovereign and its employees knew that AMG was already in default under the terms of the July 16, 2004 documents before said documents were even executed.

101.    Sovereign and its employees, drafted or caused to drafted documents which would ensure that Mrs. Gagliardi and Antonio Gagliardi would be mislead into believing that AMG was a financially viable entity, capable of meeting its obligation under the July 16, 2004 documents, even though Sovereign and its employees knew that the exact opposite was true.

102.    Mrs. Gagliardi has suffered substantial damages as a result of this conspiracy.

## JURY DEMAND

Plaintiff Mrs. Gagliardi each hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

Mrs. Ann Gagliardi,
By her counsel,

**LAW OFFICES OF MICHAEL C. MCLAUGHLIN**

Dated:  September 9, 2005    By:    /s/ Michael C. McLaughlin, Esq.
(BBO# 367350)
One Beacon Street, 33rd Floor
Boston, MA 02108
(617) 227-2275

## CERTIFICATE OF SERVICE

I certify that a copy of First Plaintiff's Amended Complaint and Demand for Jury Trial was served on the following person on this date and in the manner specified herein: Electronically Served Through ECF: Kathleen C. Stone, Esquire, counsel for the Defendant.

Dated: September 9, 2005                      /s/ Michael C. McLaughlin, Esq.

## CERTIFICATION UNDER LOCAL RULES 7.1

I, Michael C. McLaughlin, certify that I have conferred with opposing counsel and have attempted in good faith to resolve and narrow the issue.

Dated: September 9, 2005                    /s/ Michael C. McLaughlin, Esq.
                                            BBO# 337350
                                            Law Offices of Michael C. McLaughlin
                                            One Beacon Street, 33rd Floor
                                            Boston, MA 02108
                                            (617) 227-2275