UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10859-NG

| | |
|---|---|
| MRS. ANN GAGLIARDI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SOVEREIGN BANK, | ) |
| | ) |
| Defendant. | ) |

**ADDITIONAL SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION BASED UPON DOCUMENTS DISCOVERED ON SEPTEMBER 15, 2005**

Now comes the Plaintiff with this Additional Supplemental Memorandum in Support the Plaintiff's Motion for a Preliminary Injunction based upon documents obtained in discovery on September 15, 2005. In support of this Motion the Plaintiff states as follows;

1. As part of the discovery in this matter Plaintiff's counsel has begun the review of the Defendant's documents which are at the office of defendant's counsel, located at 109 State St. That document review began at 11 am on September 15, 2005 and continued approximately for two hours. On September 16, 2005 Defendant's counsel unilaterally refused further access to the documents unless Plaintiff's counsel agreed to sign an Assented to Protective Order which is attached as Exhibit 1. That refusal is the subject of a separate Motion to Compel Production of Documents and for Sanctions.

1

2. One of the first documents to be reviewed by Plaintiff's counsel during the two hours of document review was a document entitled "Initial Memo and Credit Report", dated April 8, 2004 (the Credit Report). Plaintiff's counsel asked for and received (during the first 10 minutes of the document review), a copy of the Credit Report. It is suspected that once defense counsel realized the content of the Credit Report, that the decision to halt discovery, without seeking any protective order from this court, was made the defense counsel.

3. The author of this Credit Report was Bret E. Bokelkamp, the same individual that has already submitted an affidavit in this matter. The Credit Report indicates that it was a three page document; however there are only two pages that have been produced.

4. The Plaintiff emphasizes that the Credit Report is one of thousands of documents that were or should have been produced fro review on September 15, 2005. The Plaintiff's counsel has seen virtually dozens of documents that provide additional support for the Plaintiff's position and those documents have already been designated to be copied possible, however the defense counsel refuses any further access and refuses to copy the documents as already described above.

The Credit Report reveals that:

- Bank was fully aware the AMG was in serious financial condition.

- That even if the bank were to receive the additional collateral in the form of the Mortgage on the property owed by the Plaintiff, that property <u>would not be sufficient to secure the loan</u>. On page 1, in the third paragraph, Bokelkamp states "Their offer of additional collateral is a substantial assistance, <u>but may not be</u>

<u>sufficient to secure the bank's full outstandings</u>". See the Credit Report attached as Exhibit 2 (emphasize added). The above statement by Bokelkamp makes clear that the property of the Plaintiff did <u>not</u> make the borrower creditworthy, as the bank asserted at the hearing. The court may remember that the bank's counsel relied on certain provisions of the Regulations to ECOA to justify its position. One of those regulations is Section 202.7(d) (5) which requires that the additional party that may be required by the bank, <u>might be allowed</u> if the party **is necessary for the credit requested.** Bokelkamp's statement suggests the additional collateral was not enough for the "credit requested". This gives the Court additional justification for halting the foreclosures because of the likelihood of success on the ECOA claim.

- The Credit Report also reveals that the bank had determined that the President of AMG, Anthony Gagliardi, was incompetent and inadequate manager prior the July 16, 2004 so called "Extension of Credit". This can be seen in the fourth paragraph of the Credit Report which has a heading of "OPINION OF MANAGEMENT". It states:

> "[Anthony Gagliardi] does not have sufficient understanding of the correct billing to assure that the town of Avon will accept his billings without their own determination of the correct amount and substantial adjustments… Given the resent events, the management would have to be rated as inadequate and weak."

In prior memoranda the Plaintiff has pointed out to the Court, the extraordinary circumstances whereby the Forbearance Agreement was executed (1) even though the bank acknowledged that the borrower had not demonstrated how the loan will be paid off, (2) even though the bank did not know the value of Mrs. Gagliardi's

3

property, (3) and even though the bank was unaware of whether AMG could continue in business because the bank knew the bonding was not available. The above quote adds an extraordinary fourth component to the already improbable lack of creditworthiness analysis. This fourth component is that the management was acknowledged by the bank to be incompetent. As a result, there can be little doubt that the bank was certainly not extending credit to AMG, a company run by an individual who could not even understand his own company's billing procedures. These extraordinary material facts were withheld from Ann Gagliardi. Surely if these four facts were disclosed, Sovereign would never have obtained the Guaranty, Mortgage and Assignment of Leases and Rents. This issue alone would suggest that the Plaintiff's likelihood of success on merits on the ECOA claim and the non-federal claim is very high.

5. During the hearing on the Plaintiff's Motion for Preliminary Injunction, the bank's counsel asserted that the bank was "forbearing" from initiating legal action against AMG, the borrower, in exchange for the Forbearance Agreement and supporting documents. Banks counsel, in response to the Plaintiff's assertion to the contrary, argued that the bank had "collateral on which to foreclose". The court may recall that Plaintiff had argued that there was no actual forbearance by the bank because the bank must have determined that it, in effect, had nothing to foreclose on. This assertion was made based upon the extraordinarily uncommon Forbearance Agreement. The Plaintiff directs the court's attention to the sixth paragraph on page 2 of the Credit Report. This paragraph entitled "Action Plan", states **"Take additional collateral as the first step. The bank appears to be**

**largely unsecured."** This quote demonstrates that the representations of Sovereign to the Court are not accurate. The quote makes clear that the bank was not granting any concession or any extension of the credit to the borrower by not foreclosing (as will be see below the bank had determined at this time that no extension of credit will be given). These facts are important with regard to the issue of consideration to the Plaintiff in exchange for her Guaranty and Mortgage. It is also dispositive of the issue of whether the bank's sole objective was misleading the Plaintiff into giving the Guaranty and the Mortgages.

6. As already stated above there are virtually dozens of documents in the possession of defendant's counsel which will demonstrate additional background information to unable this court to find that the Plaintiff has a reasonable likelihood of success on merit. Prior to the defense counsel refusing access to the bank's documents Plaintiff's counsel identified a document entitled "Watched Asset Report" dated June 20, 2004. Defense counsel refused to copy this document and it is not supplied to the Court as an attachment because of the defense's counsel refusal. However the Plaintiff's counsel took care to copy the following quotes from the Watched Asset Report. On page 2 of 10 the Watched Asset Report states that there is "no availability of credit to this Borrower". This statement again emphasizes that the sole purpose of forbearance was not the extension of credit. It was solely to cause the plaintiff to sign the Guaranty and Mortgages. **There can be no doubt as to this fact. On page 3 of 10 of the Watched Asset Report, the bank states as follows:**

5

> **"The proposed forbearance is recommended at this time due to the sole benefit of the additional collateral as the basis of the agreement"**

- The court may recall that the Plaintiff has asserted that the bank had concocted the forbearance in order to make it appear that the Borrower was being advanced funds, when in fact, no funds were advanced at all. Plaintiff had asserted that the bank wanted the bonding underwriter to believe that AMG had funds when there were no funds to justify any bonding company ever issuing bond to AMG given the two million "overadvancement" that existed. It appears that the Plaintiff's assertion is absolutely correct. On page 2 in the seventh paragraph of the Credit Report, Bokelkamp states:

  > **"The company's ability to obtain continuing bonding may fall upon the bank's willingness to put a portion of our LOC[line of credit] into a term note, secured by the R/E, there by creating working capital for AMG. Without bonding the company cannot operate as it generally worked on jobs with municipalities all of which require bonding".**

  This quote makes two things clear. First, the bank knew that the bonding was critical if the borrower was to survive. Second, the bank knew that it did not and was not going make working capital available to AMG so that it could get bonding. Rather, the bank created on July 16, 2004 two <u>new</u> notes (1.6 Million Note and 1 Million Note) which made it appear that there was no default. Obviously, this maneuver was withheld from the Plaintiff as the bank sought to obtain her guaranty and mortgages.

- The Credit Report indicates that as of April 2004 the bank knew that the company was doing so badly that it recommended that the risk rating for the company be

down graded to a rating of 8. This can be found in the last paragraph on page 2 of the Credit Report. This decision to downgrade the risk rating is in part due to the fact that the bank had no idea of the value of the receivables of the company. This can be seen in the paragraph entitled "Collateral".

> **"As of 9/30/03 AMG showed claims receivables of $976M. This amount is now estimated to be $1,145M. We have no information about these claims at this time to make any judgment about their value."**

**This is just another example of the complete lack of any creditworthiness analysis which could have in any way justified the bank's requiring the Plaintiff to sign the Guaranty and Mortgages.**

- On Page 2 of the Credit Report in the fourth paragraph, Bokelkamp states

> "Since [Anthony and Antonio's] assets are either jointly owned, or owned through trusts, their assets are not easily attached by the Bank if collection is done via litigation."

This statement demonstrates that the bank was already well into the litigation mode. It also knew that it did not have a strong position relative to jointly owned assets of Antonio. This strongly suggests that the motivation for the forbearance was not the extension of credit but requiring the Plaintiff's Guaranty and Mortgage.

- The Watched Asset Report also provides the Court with another glaring example of how Sovereign never undertook a creditworthiness analysis of Antonio Gagliardi, the Plaintiff's husband. Although the Plaintiff's counsel does not have a copy of the Watched Asset Report of June 28, 2004, because the Defendant's refusal to provide the copy of it, Plaintiff's counsel specifically copied quotes from the Watched Asset Report. One of those quotes is on page 3 of 20 of the

7

Watched Asset Report. In that quote Sovereign is discussing the possibility of loaning $150,000.00 to Antonio Gagliardi. Obviously, had Sovereign undertaken a creditworthiness analysis, it would have been fully aware of his ability to repay $150,000.00 loan. However, in referring the possibility of granting such loan to Antonio Sovereign states that the possibility is **"subject to an application [from Antonio] and [subject to Antonio's] repayment ability…".** This quote demonstrate clearly that only days before the signing of illegal Guaranty, Mortgage and Assignment of Leases and Rents that Sovereign had no idea whether Antonio could even afford to repay $150,000.00 loan. It must be remembered that ECOA Regulation 202.7(d)(5), (d) through (d)(5) deal with when the spouse can be required to sign. This has been thoroughly discussed in the most recent memo sent by the Plaintiff to the Court. However, the Watched Asset Report provides yet another example of the complete lack of compliance with the Regulation. The fact is the bank simply required Mrs. Gagliardi to sign because she was the wife of Antonio. It was not because the value of the collateral was insufficient, because the bank did not know its value. It was not because her husband was not creditworthy, because the bank did not know what his creditworthiness was. Again, the Plaintiff emphasizes that there are hundreds of documents which the Plaintiff believes will further demonstrate the strength of the Plaintiff's claim as it relates to ECOA. The Plaintiff respectfully suggests the current documentation before the Court provides more than sufficient justification for the issuance of a Preliminary Injunction.

**CONCLUSION**

There are numerous other documents already reviewed by with Plaintiff's counsel which will provide additional support for the Plaintiff's position one the Court orders Sovereign to produce the files. The sudden and illogical refusal of defendant to allow access to the defendant's documents not only is in violation of Federal Rule of Civil Procedure, it also represents an attempt to delay additional discovery perhaps because Sovereign hopes that the Court will find in favor of Sovereign prior to the truth being discovered. The Plaintiff will be filing a Motion to Compel the Production and for Sanctions in connection of Sovereign sudden stone walling of discovery. What is clear however is there is nothing about the Defendants position that is normal, reasonable, and even legal.

Respectfully Submitted,

Mrs. Ann Gagliardi,
By her counsel,

**LAW OFFICES OF MICHAEL C. MCLAUGHLIN**

Dated: September 21, 2005   By:   /s/ Michael C. McLaughlin, Esq.
(BBO# 367350)
One Beacon Street, 33rd Floor
Boston, MA 02108
(617) 227-2275

**CERTIFICATE OF SERVICE**

I certify that a copy of Additional Supplemental Memorandum in Support the Plaintiff's Motion for a Preliminary Injunction Based Upon Documents Discovered on September 15, 2005, was served on the following person on this date and in the manner specified herein: Electronically Served Through ECF: Kathleen C. Stone, Esquire, counsel for the Defendant.

Dated: September 21, 2005                            /s/ Michael C. McLaughlin, Esq.

## CERTIFICATION UNDER LOCAL RULES 7.1

      I, Michael C. McLaughlin, certify that I have conferred with opposing counsel and have attempted in good faith to resolve and narrow the issue.


Dated: September 21, 2005              /s/ Michael C. McLaughlin, Esq.
                                                      BBO# 337350
                                                      Law Offices of Michael C. McLaughlin
                                                      One Beacon Street, 33rd Floor
                                                      Boston, MA 02108
                                                      (617) 227-2275

Exhibits of Additional Supplemental Memorandum in Support the Plaintiff's Motion for a Preliminary Injunction Based Upon Documents Discovered on September 15, 2005 as described below:

| | | |
|---|---|---|
| Exhibit 1 | Assented – To Protective Order (Ann Gagliadi v. Sovereign) | 2 pages |
| | Assented – To Protective Order (Sovereign v. Gagliardi) | 3 pages |
| Exhibit 2 | Initial Memo and Credit Comment | 2 pages |

were submitted in paper format to the Clerk's Office of United States District Court, District of Massachusetts by hand on September 21, 2005.

Dated: September 21, 2005        /s/ Michael C. McLaughlin, Esq.
                                 BBO# 337350
                                 Law Offices of Michael C. McLaughlin
                                 One Beacon Street, 33rd Floor
                                 Boston, MA 02108
                                 (617) 227-2275


## CERTIFICATE OF SERVICE

I certify that a copy of Additional Supplemental Memorandum in Support the Plaintiff's Motion for a Preliminary Injunction Based Upon Documents Discovered on September 15, 2005 and its Exhibits 1 and 2, were served in paper format on the following person on this date and in the manner specified herein: by hand: Kathleen C. Stone, Esquire, counsel for the Defendant.

Dated: September 21, 2005        /s/ Michael C. McLaughlin, Esq.
                                 BBO# 337350
                                 Law Offices of Michael C. McLaughlin
                                 One Beacon Street, 33rd Floor
                                 Boston, MA 02108
                                 (617) 227-2275