UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Ann Gagliardi )<br>    )<br>    Plaintiff, )<br>    )<br>    v. )<br>    )<br>Sovereign Bank )<br>    )<br>    Defendant. ) | C.A. No. 05-10859-NG |

GERTNER, D.J.:

## MEMORANDUM AND ORDER RE: PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION
September 28, 2005

Plaintiff Ann Gagliardi signed a limited recourse guaranty and mortgage to Sovereign Bank ("Sovereign") to enable her son, Anthony Gagliardi and his business, AMG Construction Company, Inc., to extend an existing line of credit with the bank.  When AMG defaulted on the loan, the bank sought and received a foreclosure judgment in state court on Ms. Gagliardi's property.  Plaintiff alleges that Sovereign illegally obtained the guaranty and mortgage from her in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, and state law.  Plaintiff filed her claim in state court, and Defendant removed to this Court on the basis of Federal Question Jurisdiction.

Currently before the Court is Plaintiff's motion for a Preliminary Injunction to enjoin foreclosure on the property.

1

Because I believe Plaintiff has not shown she is likely to succeed on the merits of her federal claim and substantial factual questions remain on her state law claims, Plaintiff's motion is **DENIED.**

I. **Factual Background**

In July, 2001, Sovereign extended credit to AMG Construction Company, Inc. ("AMG"), a company run by Anthony Gagliardi, the plaintiff's son. The plaintiff's husband, Antonio Gagliardi, is a shareholder and director of the company. To secure this credit, Anthony Gagliardi and Antonio Gagliardi each signed an Unlimited Guaranty and Antonio Gagliardi and Ann Gagliardi executed a Non-Encumbrance Agreement relating to a commercial office building they own at 331 Page Street in Stoughton, Massachusetts ("the Stoughton property"). In the Non-Encumbrance Agreement, signed in July, 2001, Plaintiff and her husband agreed not to encumber the property until Antonio Gagliardi had discharged his obligations to Sovereign. The Stoughton property, which Plaintiff and Antonio Gagliardi own as tenants by the entirety, is the subject of the current litigation.

The bank and AMG modified the loan periodically between 2001 and 2004, but by 2004, AMG was in default on an outstanding debt of over $2.6 million and began negotiations

with Sovereign to address repayment.  Sovereign alleges that at this time AMG was illiquid, undercapitalized, in "serious default" of its payment obligations, and was not creditworthy. The bank and AMG sought to negotiate a new arrangement to address repayment of the debt.      As a result of these negotiations, the parties entered a forbearance agreement on July 16, 2004.  Sovereign agreed to forbear on exercising its right to declare the loan in default in exchange for the receipt of additional collateral from AMG and the Gagliardis. Specifically, AMG and Sovereign agreed that AMG would make payments under two restructured notes, one for $1 million and one for $1.6 million. In addition to other agreements and assurances, the following documents were signed:

    1) Antonio Gagliardi and Ann Gagliardi signed a mortgage on the Stoughton property and an assignment of the leases and rents from that property.

    2) Antonio Gagliardi and Ann Gagliardi each signed a Limited Recourse Guaranty.

In return for these assurances, Sovereign agreed to give AMG until December 2004 to repay the loans.

    The parties dispute whether Ms. Gagliardi had counsel in this transaction.  Plaintiff alleges that she was not represented by counsel at the meeting on the forbearance

agreement in July, 2004. Sovereign responds that it reasonably believed AMG and Anthony Gagliardi's attorney, Mr. Quinlan, represented her, citing Mr. Quinlan's participation in negotiations about the documents Ms. Gagliardi signed.

In December 2004, AMG defaulted on its debt. Sovereign filed suit against AMG, Anthony Gagliardi, and Antonio Gagliardi in Suffolk Superior Court and commenced foreclosure proceedings on the Stoughton property in January 2005. The state court issued a judgment of foreclosure on the property on March 29, 2005. Two days later, Plaintiff filed a complaint in Superior Court alleging violations of ECOA. Defendant removed the case to this court on April 28, 2005.

## II. Analysis

The plaintiff bears the burden of proof to justify a preliminary injunction. As this Court has previously explained:

> A preliminary injunction is an extraordinary equitable remedy. . . . As such, the law imposes on Plaintiffs the substantial burden of convincing the Court that they are likely to succeed ultimately and further, that if emergency relief is not granted, they will be 'irreparably' harmed.

Boston's Children First v. City of Boston, 62 F. Supp. 2d 247, 253 (D. Mass. 1999) (internal citations omitted).

To prevail on her motion, Plaintiff must show: (1) she is substantially likely to succeed on the merits of her claims;

(2) there is a significant risk that irreparable harm will follow absent an injunction; (3) the benefits flowing from the injunction will, on balance, outweigh the burdens imposed on the defendant; and (4) an injunction is consistent with the public interest.  Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co., Inc., 378 F.3d 29, 33 (1st Cir. 2004); Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004).

### A. Plaintiff's Likelihood of Success

Likelihood of success is the "main bearing wall" of the four-factor test for assessing preliminary injunction requests. Ross-Simons v. Baccarat, 102 F.3d 12, 16 (1st Cir. 1996).  Where, as here, an immediate injunction is sought, the relevant likelihood of success is the likelihood that the movant would, after trial, be entitled to a permanent injunction.  Ocean Spray Cranberries, Inc. v. Pepsico, Inc., 160 F.3d 58, 61 (1st Cir. 1998).  In this case, such relief would permanently prevent the bank's foreclosure on the Stoughton property.  Plaintiff has not established that she is likely to succeed on the merits of her ECOA or state law claims.

### 1. The ECOA Claim

Plaintiff alleges that Sovereign required her to guarantee a loan and sign a mortgage in violation of the anti-discrimination provisions of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691.  The Act makes it unlawful for "any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of . . . marital status." 15 U.S.C. § 1691(a)(1).  Regulation B enacted under this statute specifies that "a creditor shall not require the signature of an applicant's spouse . . . other than a joint applicant . . . if the applicant qualifies under the creditor's standards of creditworthiness." 12 C.F.R. § 202.7(d)(1).

The original purpose of the statute was not to protect those who, like Ms. Gagliardi, signed a mortgage that was later foreclosed and sought to avoid liability under the original agreement.  Rather, the statute protected women from creditors who refused to extend them credit absent their husbands' signatures.  See, e.g., Brothers v. First Leasing, 724 F.2d 789, 793-94 (9th Cir. 1984) ("The purpose of ECOA is to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit.").  No such discrimination is alleged in this case.

The interpretation of the statute, however, need not be limited to the original purpose. As the D.C. Circuit has pointed out, the original concern with discrimination against women "does not negate the clear language of the Act itself that discrimination against Any applicant with respect to Any aspect of a credit transaction, which is based on marital status is outlawed." Markham v. Colonial Mortg. Service Co., 605 F.2d 566, 569 (D.C. Cir. 1979) (capitalization in original).

Under the Act, a creditor may not require the signature of a spouse on a loan if the applicant is creditworthy. Plaintiff argues that her husband and son were creditworthy and therefore the Bank violated ECOA by requiring her signature. She further suggests that Sovereign must "produce a creditworthiness analysis showing that AMG, as the applicant for credit, was not creditworthy." Plaintiff's Memorandum in Support, at 7. This argument is flawed, however, because the burden is on the plaintiff-debtor to show that her husband *was* creditworthy. Ramsdell v. Bowles, 64 F.3d 5, 9 (1st Cir. 1995). Plaintiff has not presented any evidence to suggest that AMG, Anthony Gagliardi, or Antonio Gagliardi *were* creditworthy in July, 2004. Indeed, given the status of the

defaulted loan and the overdrawn credit line, all evidence suggests that they were not creditworthy.

The First Circuit case <u>Ramsdell v. Bowles</u> posed a factual situation similar to Ms. Gagliardi's.  In <u>Ramsdell</u>, a construction company owned by the Plaintiff's husband and son obtained loans from a bank.  The bank agreed to make an additional loan on the condition that Ms. Ramsdell sign a personal guarantee.  Affirming the district court's finding that requiring this spousal signature did not violate ECOA, the court held that "the Bank's directors authorized the additional working capital line only on the condition that the Bank's overall loss exposure not be increased.  Given that exposure, Ramsdell's lack of creditworthiness was an issue not reasonably disputable." <u>Ramsdell v. Bowles</u>, 64 F. 3d at 9.

Similarly in this case, AMG, Anthony Gagliardi, and Antonio Gagliardi, the parties requesting forbearance from Sovereign, were in default on their loan.  Antonio Gagliardi had already signed an unlimited guaranty, giving the bank access to his assets as collateral for the original loan.  The bank would have had little reason to agree to the forbearance in 2004 absent Ms. Gagliardi's mortgage and guaranty, which helped ensure that Sovereign's "overall loss exposure [was not] increased" by the new agreement.  Thus, as in <u>Ramsdell</u>,

Antonio Gagliardi's lack of creditworthiness was "an issue not reasonably disputable." Id. Plaintiff has not presented any evidence to the contrary.

Furthermore, requiring a spousal signature does not violate the Act where a creditor legitimately demands additional collateral to secure the loan.  A request for the signature of a spouse "for the purpose of creating a valid lien" does not constitute marital discrimination under ECOA. 15 U.S.C. § 1691(d)(a).  Since Plaintiff co-owned the Stoughton property as a tenant by the entirety, Ms. Gagliardi's mortgage and Limited Recourse Guaranty helped "creat[e] a valid lien" and provided the necessary additional collateral to secure the forbearance.  Under these circumstances, the requirement of Ms. Gagliardi's signature was not an act of discrimination based on marital status but rather a legitimate demand that additional collateral be secured in order to merit the forbearance.  Plaintiff therefore has not shown a likelihood of success on the merits of her ECOA claim.

    **2. State Law Claims**

Substantial factual questions remain on Plaintiff's state law claims.  These include Plaintiff's legal representation (or lack thereof) in negotiations with Sovereign and any

allegedly fraudulent conduct by the bank. Thus, on the present record, Plaintiff has not shown a likelihood of success on her state law claims.

### III. Conclusion

For the reasons discussed here, Plaintiff's motion is **DENIED.**

**SO ORDERED.**

**Dated: September 28, 2005**            **  s/ NANCY GERTNER U.S.D.J.  **