UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANN GAGLIARDI
    Plaintiff

v.                                                          Civil Action No.
                                                    05-10859-NG

SOVEREIGN BANK
    Defendant


**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
TO COMPEL PRODUCTION OF DOCUMENTS AND FOR SANCTIONS**

Defendant Sovereign Bank ("Sovereign") opposes plaintiff's Motion to Compel Production of Documents and for Sanctions, filed September 21, 2005, docket #24.

**1.**    **Protective Order**

Plaintiff complains about the fact that Sovereign's counsel requested a protective order limiting counsel's and the parties' use of documents produced in discovery. Although counsel are continuing to work toward agreement on the language, plaintiff's request for sanctions is based, in part, on events surrounding the bank's request for a protective order, so this response set forth the reasons why those events should not lead to sanctions against the bank or its counsel. The undersigned is not requesting the court to take any action with regard to the protective order at this time, except to deny the motion for sanctions, but presents the following facts only because plaintiff has moved for sanctions because of the protective order.

Some of the documents the bank is prepared to copy in discovery illustrate or reveal the inner workings of the bank and its financial analysis of certain debts. It is important to the bank that its analyses be kept out of the public realm. The protective

order would cover documents produced in this litigation, and a parallel order would cover documents produced in the related state court litigation. They would not limit counsel's use of bank documents for purposes of this litigation, but would simply contain their use to the pending lawsuits.

Factually, the issue arose on September 15, 2005. Plaintiff's counsel reviewed documents produced by the bank, and designated all of them for copying. Before making copies, bank counsel requested plaintiff's counsel to sign the protective order. Bank's counsel circulated the draft protective orders to Michael McLaughlin, who represents Ann Gagliardi in this case and her husband Antonio in the state court case, and also to Richard Nicholson who represents their son Anthony and the company AMG in the state court case. On September 16, 2005, plaintiff's counsel returned to review more documents, specifically those which had been produced pursuant to subpoena *duces tecum* by Edward Quinlan, so that he could prepare for the Quinlan deposition on September 19, 2005. Mr. Nicholson had not responded to the email of the day before, and the issues of the protective orders remained open. The undersigned called Mr. Nicholson who said he had not looked at the protective order yet, but would get back to her shortly. Until both lawyers for the Gagliardis signed the protective order, bank's counsel was unwilling to copy documents for Mr. McLaughlin.

Again on September 19, 2005 the undersigned asked Mr. Nicholson about it the protective order, after the Quinlan deposition had been suspended at Mr. McLaughlin's request, and he agreed to get back to her. Counsel sent a follow-up email to Mr. Nicholson and to a partner in his firm on September 21, 2005, and sent a letter to both

Mr. McLaughlin and Mr. Nicholson explaining the reasons they both needed to sign the protective order.

As explained, it is important that both lawyers, Mr. McLaughlin and Mr. Nicholson, sign the protective order in both cases - federal and state – because of the nearly identical facts and substantially similar legal claims. For instance, Mr. McLaughlin has alleged nearly identical facts on behalf of Ann and Antonio Gagliardi in federal and state court, and 8 identical causes of action. If he believes that a bank document supports one of his claims in the federal case, he will undoubtedly want to use it in the state case, at which point Mr. Nicholson would gain access to it, and be free to release it to the public, or do anything else he pleases, unless he, too, is bound by the protective order. Also, it is possible that the federal claims will be dismissed and this case remanded to state court. If both cases were pending in state court, they would likely be consolidated – all the more reason to have parallel protective orders entered in the two cases. All of this reasoning was stated in the undersigned's September 21, 2005 letter, but Mr. McLaughlin chose to ignore the bank's legitimate reasons for asking for the protective order, and instead moved for sanctions against the bank and its counsel.

Not until September 27, 2005 did bank's counsel receive a response from Mr. Nicholson, after a motion had been served under Superior Court Rule 9A to have the proposed protective order entered as an order of the Superior Court. Now that Mr. Nicholson has responded, it is possible that a protective order can be agreed upon by counsel. Again, the foregoing facts are presented only because they form a basis for plaintiff's motion for sanctions, not because bank's counsel is requesting any judicial intervention at this time, except a denial of plaintiff's motion for sanctions.

2.  **Defendant's Objections to Requests for Production**

Sovereign has objected to several of plaintiff's requests for production of documents, generally because the requests are overbroad, are not tailored to the claims in this case, and are a classic example of using discovery as a fishing expedition.[1] That plaintiff's requests are an attempt to fish for documents is all the more striking, now that the court has found it is not likely plaintiff will succeed on her claim under the Equal Credit Opportunity Act.

It should be underscored that, subject to the protective order, Sovereign has agreed to produce documents which number, it is estimated, at least a thousand pages. These include credit files, bank officer analyses, memoranda, communications, and financial reports submitted by AMG. In other words, the bank will produce the files its workout officer generated and used in connection with the forbearance (aside from privileged material). Since plaintiff's claims relate to the forbearance, plaintiff will be receiving all files relevant to her allegations that she was fraudulently induced to sign the forbearance agreement, that the bank used fraud, misrepresentations or duress, or that the bank intentionally inflicted emotional distress on her.[2]

On the other hand, Sovereign has objected to producing other internal bank documents that have nothing to do with plaintiff's various claims.[3] Plaintiff, perhaps sensing the weakness of her case, seems to be looking for documents that have nothing to do with her claims of fraud, misrepresentation, duress and the like, or with any claims she

---

[1] Defendant's Response to Plaintiff's Request for Production of Documents is attached as *Exhibit 1*.
[2] It hardly needs to be said that Sovereign disputes all of plaintiff's allegations, both factually and legally.
[3] Plaintiff's counsel did not initiate any conference to try to resolve Sovereign's objections as required by Local Rule 37.1.

4

could conceivably bring. For instance, she asks for "*all accounting documents which include or refer to AMG loan documents*" (Request #2). Sovereign has agreed to produce all financial reports it received from AMG's accountant, subject to the protective order. To the extent such documents are covered by the request, there is no problem. But Sovereign is not prepared to produce its own internal accounting documents. These are not relevant to any claim plaintiff has made, or could make. Assume, hypothetically, that Sovereign accounted for AMG's loan as a performing loan, when it was actually non-performing. Plaintiff, a guarantor, has no standing to bring a claim for such an error. That hypothetical situation would be a matter between the bank and its regulators and auditors, but would have no effect on the bank's right to seek payment from plaintiff pursuant to her guaranty. Plaintiff simply has no standing, under any statutory or common law cause of action, to contest how Sovereign accounts for its loans, and thus has no right to discovery of Sovereign's accounting documents. Plaintiff has not, in fact, made any such allegation in her complaint, but even if she did, it is clear that a private individual has no cause of action and no standing to sue a bank for its internal accounting practices. Plaintiff's obligations under her guaranty are primary, and even if Sovereign did make an accounting error, that would not be a defense to her liability.

Plaintiff has also asked for "*all documents that deal with loan loss reserve calculations, right off (sic) calculations . . .*"[4] (Request # 3). The point is much the same as with the accounting documents, discussed above. Even if one assumes, for purposes of argument, that Sovereign did write off some or all of the AMG loan, that does not have a bearing on plaintiff's liability under the guaranty. A bank's write off of distressed loans

---

[4] This request, #3, also asks for "creditworthy analysis and calculations" for AMG and the three Gagliardis. Sovereign does not object to producing these.

5

has to do with its own reserve requirements, but has nothing to do with whether a third party, such as a guarantor, owes money to the bank. A write off, if it does occur, does not give rise to any cause of action a guarantor could assert. There is simply no cause of action that a guarantor could bring that would dispute or enforce a bank's procedures for writing off loans. Again, that is a matter for the bank's regulators and auditors, but not for a guarantor.

> Moreover, plaintiff's guaranty states:
>
> Subject to conditions and limitations of this agreement, the obligations of the undersigned hereunder are primary. . .The undersigned authorizes the Lender to alter, amend, cancel, waive, or modify any term or condition of the Liabilities and of the obligations of any other person liable or obligated to the Lender for or on the Liabilities, without notice to, or consent from, the undersigned. *No compromise, settlement, or release by the Lender of the Liabilities* or of the obligations of any such other person (whether or not jointly liable with the undersigned) and no release of any collateral securing the Liabilities or securing the obligations of any such other person *shall affect the obligations of the undersigned hereunder.*
>
> *(See Exhibit 25 to the Bokelkamp Affidavit, docket #10)*

In other words, plaintiff is contractually obligated to pay the debt, even if the bank has decided not to pursue AMG, or has written off the loan. Of course, the bank has not foregone its rights to pursue AMG, and has sued AMG in the state court action, but the point remains: plaintiff has a primary obligation as a guarantor, and has no cause of action against the bank in connection with any write off of the loan, or how the bank calculated its loan loss reserve. Plaintiff has not made any such allegation in her complaint, but even if she tried, there simply is no cause of action that she could bring against the bank for its internal accounting practices.

6

Plaintiff has asked for various bank procedures and manuals including those pertaining to training employees on ECOA (Request #7). Since the court has already determined that there is no ECOA violation in this case, this request is entirely irrelevant.

Plaintiff also asks for manuals regarding the Bank Holding Company Act, particularly those regarding the prohibition of illegal linking of financial services in violation of the Act (Request #8). Plaintiff's counsel ignores, intentionally, the very clear language of Section 13 of the Forbearance Agreement *(See Exhibit 15 to the Bokelkamp Affidavit, docket #10)*.[5] Under Section 13, AMG was required to obtain additional capital contributions from investors in the amount of $400,000 within a month of the Forbearance Agreement. Of the total capital required, it was permissible for up to $150,000 to be contributed by Antonio Gagliardi, and Antonio was not disqualified from applying to Sovereign for a loan to finance his portion of the capital contribution, if he made such a contribution. If he did apply for a loan, Sovereign was not obligated to approve the application, or to fund any capital contribution loan for that matter. The bank retained sole and exclusive discretion whether to make a loan to Antonio or whether to make any capital contribution loan at all. Nothing in the Forbearance Agreement was to be deemed to prohibit Antonio Gagliardi from applying to other banks for a loan. If Sovereign determined not to make a loan to Antonio, the borrower nonetheless was required to have the additional capital of $400,000 no later than August 15, 2004.

The terms of the Forbearance Agreement make crystal clear that Antonio was not required to obtain additional credit from Sovereign, and there was no linking of the

---

[5] Sovereign has already made clear, in its Opposition to plaintiff's motion to amend her complaint, that plaintiff has no tying claim under the Bank Holding Company Act. *See Opposition filed September 16, 2005, docket # 16*. Nonetheless, plaintiff ignored the point when she filed her Motion to Compel and for Sanctions, 5 days later.

forbearance to a requirement that he obtain additional credit from Sovereign. In fact, the bank retained all rights to *deny* him credit. In the face of these facts, and ignoring the document altogether, plaintiff falsely alleges in Count VII that Sovereign *required* Antonio to obtain additional credit, thus violating § 1972 (1) of the Bank Holding Company Act. By making this allegation, counsel ignored the requirement of Fed. R. Civ. P. 11 (b) (3) that "the allegations and other factual contentions have evidentiary support. . ." Having alleged a spurious claim and willfully ignoring the clear language of the documents, plaintiff is not entitled to further discovery of documents.

3. **Conclusion**

For the foregoing reasons, the court should deny plaintiff's Motion to Compel Production of Documents and for Sanctions.

                                                              DEFENDANT
                                                              SOVEREIGN BANK
                                                              by its attorney,

                                                              /s/ Kathleen C. Stone
                                                             Kathleen C. Stone
                                                             BBO# 481920
                                                             Looney, Cohen, Reagan & Aisenberg, LLP
                                                             109 State Street
                                                            Boston, MA 02109
                                                            617-371-1050

Dated: September 30, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANN GAGLIARDI
    Plaintiff

v.                                                  Civil Action No.
                                                    05-10859-NG

SOVEREIGN BANK
    Defendant

### DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant Sovereign Bank hereby responds to plaintiff's Request for Production of Documents under Rule 34 dated July 25, 2005.

Request

1. Loan documents including:

   Loan and Security Agreement executed by AMG and Sovereign and dated July 30, 2001
   Revolving Credit Note executed by AMG in the amount of $2,000,000
   Equipment Line Note executed by AMG in the amount of $200,000 an Unlimited Guaranty executed by Antonio Gagliardi
   Unlimited Guaranty executed by Anthony Gagliardi
   Non-Encumbrance Agreement executed by Ann Gagliardi and Antonio Gagliardi
   Modification Agreement dated July 1, 2002
   Modification Agreement dated June 30, 2003

   Forbearance documents including:

   Forbearance Agreement dated July 16, 2004
   Two restructured notes, for 1,600,000 and $1,005,264
   Ratification of guaranties by the original guarantors, Antonio Gagliardi and Anthony Gagliardi
   Mortgage on 615 Concord Street, Framingham executed by Anthony Gagliardi, as trustee of Anthony & Company Realty Trust, as assignment of leases and rents. and a limited recourse guaranty executed by Anthony Gagliardi, Trustee
   Mortgage on 331 Page Street, Stoughton executed by Antonio Gagliardi and Ann Gagliardi, an assignment of leases and rents, and a limited recourse guaranty executed by Ann Gagliardi.

All of the above documents are hereinafter referred to as the AMG Loan Documents.

Response

1. Defendant will make the loan documents and forbearance documents in its possession available for inspection at the offices of Sovereign Bank, 75 State Street, Boston, MA at a mutually convenient time.

Request

2. All accounting documents which include or refer to AMG Loan Documents.

Response

2. Defendant objects to this request as overbroad, unduly burdensome, irrelevant, and not calculated to lead to the discovery of admissible evidence. There are no claims in the case which would entitle plaintiff to "all accounting documents" of Sovereign Bank that include or refer to AMG loan documents. The requested documents could number hundreds or thousands of pages, and is therefore unduly burdensome. Also, the request is not appropriately tailored to the claims in this case.

Request

3. All documents that deal with loan loss reserve calculations, right off calculations, creditworthy analysis and calculations for AMG, Anthony Gagliardi, Antonio Gagliardi or Ann Gagliardi.

2

Response

3.      Defendant objects to this request as overbroad, unduly burdensome, irrelevant, and not calculated to lead to the discovery of admissible evidence. Notwithstanding these objections, defendant will produce documents regarding its analysis of the creditworthiness of AMG, Anthony Gagliardi, Antonio Gagliardi and Ann Gagliardi, and any write-off any loan to AMG at the offices of Looney, Cohen, Reagan & Aisenberg, LLP at 109 State Street, Boston, MA at a mutually convenient time.

Request

4.      All manuals, policy, binders, or compilations of pages relating to Sovereign accounting procedures for "controlled loans", "distressed loans", "down graded loans" or "manage assets", or any other designation of loans what are in "default". This request includes all memorandum, procedure manuals, controlled loan procedures and outlines or any other type of manual or procedure whether printed or in an electronic form, which describe, depict or otherwise present policies and procedures of Sovereign Bank when loans become "defaulted" or otherwise "overdrawn", distressed", "over-advanced", "under capitalized" or any other description of loans in default.

Response

4.      Defendant objects to this request as overbroad, unduly burdensome, irrelevant, and not calculated to lead to the discovery of admissible evidence. This request is a classic example of a fishing expedition: there are no claims in this case that would entitle plaintiff to discover generally defendant's manuals, policies, and the like regarding defaulted loans, and the request is

3

not appropriately tailored to the loans at issue in this case. Notwithstanding these objections, defendant will produce documents relating to the defaults and overadvances in connection with the loans to AMG at the offices of Looney, Cohen, Reagan & Aisenberg, LLP at 109 State Street, Boston, MA at a mutually convenient time.

Request

5.      All documents, manuals, policies and procedures of Sovereign or any state or federal banking authority, agency, commission which are used by Sovereign in Sovereign's procedures for entering into forbearance agreements with borrowers.

Response

5.      Defendant objects to this request as overbroad, unduly burdensome, irrelevant, and not calculated to lead to the discovery of admissible evidence. This request is an classic example of a fishing expedition: there are no claims in this case that would entitle plaintiff to discover generally defendant's manuals, policies, and the like regarding forbearance agreements, and the request is not appropriately tailored to the loans at issue in this case. Notwithstanding these objections, defendant will produce documents relating to the forbearance agreement entered into with respect to the loans to AMG at the offices of Looney, Cohen, Reagan & Aisenberg, LLP at 109 State Street, Boston, MA at a mutually convenient time.

4

Request

6. All procedures and manuals including employee instruction manuals relating to Sovereign's training of employees, on Sovereign's policies concerning "managed assets", "controlled loans".

Response

6. Defendant objects to this request as overbroad, unduly burdensome, irrelevant, and not calculated to lead to the discovery of admissible evidence. This request is an classic example of a fishing expedition: there are no claims in this case that would entitle plaintiff to discover generally defendant's manuals, policies, and the like regarding training of bank employees, and the request is not appropriately tailored to the loans at issue in this case.

Request

7. All procedures and manuals including employee instruction manuals relating to Sovereign's training of employees, on Sovereign's policies concerning the Equal Credit Opportunity Act, 15 U.S.C. 1691.

Response

7. Defendant objects to this request as overbroad, unduly burdensome, irrelevant, and not calculated to lead to the discovery of admissible evidence. This request is an classic example of a fishing expedition: there are no claims in this case that would entitle plaintiff to discover generally defendant's manuals, policies, and the like regarding training of bank employees, and the request is not appropriately tailored to the loans at issue in this case.

Request

8. All policies, procedures and manuals including employee instruction manuals relating to Sovereign's training of employees for compliance with the Bank Holding Company Act 12 U.S.C. 1972(1)(B-D).

Response

8. Defendant objects to this request as overbroad, unduly burdensome, irrelevant, and not calculated to lead to the discovery of admissible evidence. This request is an classic example of a fishing expedition: there are no claims in this case that would entitle plaintiff to discover generally defendant's manuals, policies, and the like regarding training of bank employees, and the request is not appropriately tailored to the loans at issue in this case.

Request

9. All policy and or procedural manuals or binders, whether printed or in electronic form which describe, proscribe, outline or require the procedures for the disposal of "paid promissory" notes, and or credit instruments, including the policies for the disposal, storage, or any other disposition of promissory Notes where such notes are replaced by subsequent promissory notes from the same borrowers.

Response

9. Defendant objects to this request as overbroad, unduly burdensome, irrelevant, and not calculated to lead to the discovery of admissible evidence. This request is an classic example of a fishing expedition: there are no claims in this case that would entitle plaintiff to discover generally defendant's manuals, policies, and the like regarding policies for disposing of promissory notes, and the request is not appropriately tailored to the loans at issue in this case.

6

Notwithstanding these objections, defendant will produce documents relating to promissory notes executed by AMG at the offices of Looney, Cohen, Reagan & Aisenberg, LLP at 109 State Street, Boston, MA at a mutually convenient time.

Request

10. All documents relating to the disposition of The Revolving Credit Notes executed by AMG in the amount of $2,000,000 and The Equipment Line Note in the amount of $200,000.

Response

10. Defendant objects to this request as unclear. It is not known what is meant by "disposition" of promissory notes.

Request

11. All correspondence between Sovereign (including its counsel) and AMG, its president Anthony Gagliardi or its Attorney Edward Quinlan.

Response

11. Defendant objects to this request to the extent it implies that Edward Quinlan was the attorney for AMG only. Notwithstanding this objection, defendant will produce documents covered by this request that are in its possession, custody or control at the offices of Looney, Cohen, Reagan & Aisenberg, LLP at 109 State Street, Boston, MA at a mutually convenient time.

Request

12. All correspondence between Sovereign (including its Attorneys) and Antonio and/or Ann Gagliardi.

Response

12. Documents covered by this request that are in defendant's possession, custody or control will be produced at the offices of Looney, Cohen, Reagan & Aisenberg, LLP at 109 State Street, Boston, MA at a mutually convenient time.

```
                              ~NDANT
                              .ER�IGN BANK
                           By its attorney,
```

Kathleen C. Stone
BBO# 481920
Looney, Cohen, Reagan & Aisenberg, LLP
109 State Street
Boston, MA 02109
617-371-1050

Dated: August 23, 2005

8

## CERTIFICATE OF SERVICE

I certify that on the 2nd day of August 2005 I caused to be mailed a copy of the foregoing, first class, postage prepaid, to:

Michael C. McLaughlin, Esq.
Law Offices of Michael C. McLaughlin
One Beacon Street
Boston, MA  02108


*Kathleen C. Stone*
Kathleen C. Stone